## A04A0699. LEVENTHAL v. CUMBERLAND DEVELOPMENT, LLC.
## A04A0700. CUMBERLAND CREEK PROPERTIES, INC. v. CUMBERLAND DEVELOPMENT, LLC.
### (600 SE2d 616)

JOHNSON, Presiding Judge.

Cumberland Development, LLC sued Ronald S. Leventhal and Cumberland Creek Properties, Inc. ("CCP") for damages and equitable relief for the alleged libel and slander of Cumberland Development's title to certain Cobb County real estate. On January 8, 2003, the parties appeared in the Cobb County Superior Court for a hearing on Cumberland Development's motion for a temporary restraining order. Afterwards, the trial court issued an order (the "Consent Order") which permanently released Cumberland Development's property from certain claims by Leventhal, CCP, and Herman Clark, acting as a receiver for property involved in a separate civil action before the Cobb County Superior Court. Leventhal, CCP, and Clark (collectively "Leventhal"), as receiver, appeal the Consent Order as improperly entered.[1] For the reasons set forth below, we are constrained to vacate the consent order and remand the case to the trial court.[2]

1. Although Leventhal challenges the Consent Order by numerous claims of error, the controlling issue is whether the parties consented to the Consent Order. "A consent judgment is not a judgment of the court, it is the agreement of the parties, entered upon the record with the sanction and approval of the court, and is their act rather than that of the court."[3] Furthermore, as the Consent Order was entered following a nonevidentiary hearing on Cumberland Development's motion for a temporary restraining order, but grants permanent relief, the trial court had no grounds for granting the relief ordered other than the parties' consent.[4]

The Consent Order was not signed by the parties or their counsel. Cumberland Development contends that Leventhal was aware that the Consent Order would be entered without the written consent of

---

[1] Leventhal and Clark, as receiver, appeal the Consent Order in Case No. A04A0699, and CCP appeals the Consent Order in Case No. A04A0700. The cases are consolidated for purposes of appeal.

[2] Cumberland Development filed a separate motion to set aside our order of January 8, 2004, granting appellants an extension to file their combined brief. This motion is denied.

[3] (Citation and punctuation omitted.) *Payne v. Jones & Kolb*, 190 Ga. App. 62, 64 (1) (378 SE2d 467) (1989).

[4] See, e.g., *Smith v. Guest Pond Club*, 277 Ga. 143-144 (1) (586 SE2d 623) (2003) (trial court may not consolidate a hearing on an application for an interlocutory injunction with a hearing on the merits of a complaint without consent of the parties).

the parties; that Leventhal impliedly agreed to this procedure; and that Leventhal took actions after the entry of the Consent Order, particularly the execution and delivery of two quitclaim deeds, showing that he accepted the Consent Order.[5] Leventhal responds that he never consented to the Consent Order as it was drafted. In evaluating these contentions, we have reviewed the pleadings and attached exhibits, and the transcript of the January 8, 2003 hearing. We have also reviewed transcripts of two subsequent hearings in connection with Cumberland Development's claim that Leventhal's execution and delivery of two quitclaim deeds shows Leventhal's acceptance of the Consent Order. Our review shows the following.

*The Receiver.* On January 14, 2002, CCP sold 12.94 acres of land to Cumberland Development (the "Property"). CCP acquired the Property through a deed from Clark's predecessor, William Herndon, as receiver in a civil action in the Cobb County Superior Court styled *Cumberland Creek Properties, Incorporated, et al. v. R. R. R. Limited Partnership, et al.* (the "Receiver Case").

*The Closing Statement.* Pursuant to a Closing Statement and attached addendum, CCP sold the Property to Cumberland Development subject to the restrictive covenants of the Cumberland Creek Country Club Community. In relevant part, the Closing Statement addendum includes the following agreements by CCP and Cumberland Development:

(i) *Fill Dirt.* Cumberland Development and CCP agree to prorate the excess fill dirt from the "Cumberland Development Property Roadways." A third party, Nix Enterprises, Inc., is solely responsible for the allocation, quality, and proration of the fill dirt.

(ii) *Stone and Stucco Accents.* Cumberland Development agrees that the houses built on certain designated lots will have brick, stone, or stucco front accents.

(iii) *Noninterference.* CCP agrees that it will not interfere with the development or marketing of Cumberland Development's property.

*The Instruments.* On October 1, 2002, CCP filed a "Sewer Easement Agreement" in the records of the Cobb County Superior Court. This instrument purports to be a grant by Cumberland Development to CCP of a sewer easement on certain Property lots. The Sewer Easement Agreement is signed by Leventhal on behalf of Cumberland Development. According to the instrument, Leventhal's authority to execute the Sewer Easement Agreement on Cumberland Development's behalf is derived from his role as "Managing Declarant"

---

[5] See *Allen v. Allen,* 198 Ga. 267 (31 SE2d 481) (1944) (voluntary act of party acknowledging validity of judgment against him operates as waiver to bring error to reverse it).

under a Declaration of Covenants, Restrictions, and Easements applicable to the Property.

On October 3, 2002, CCP filed a "Notification of Non-Compliance with Reciprocal Development and Easement Agreement" (the "Notification of Non-Compliance") in the records of the Cobb County Superior Court. In this instrument, CCP references Cumberland Development's obligation with respect to fill dirt on the Property, and claims that although the fill dirt was to be prorated between Cumberland Development and CCP, Cumberland Development used fill dirt beyond that necessary for normal and customary development, leaving no fill dirt for CCP.

On December 11, 2002, Leventhal filed his "Affidavit Affecting Title" (the "Affidavit") in the records of the Cobb County Superior Court. According to the Affidavit, Cumberland Development "continue[s] to make a false representation . . . to Cobb County" with respect to the dedication of certain improvements. More specifically, Leventhal avers that the roadbeds dedicated to Cobb County remain subject to CCP's right to acquire fill dirt. The Affidavit also purports to notify purchasers of the Property that Leventhal, as "Managing Declarant" under the restrictive covenants applicable to the Property, had not approved the grading of any of the lots. Leventhal further affirms that certain lots, to the extent each does not have "an accent of brick, stone or stucco," do not comply with the applicable restrictive covenants.

*The Lawsuit.* On December 23, 2002, Cumberland Development filed its "Complaint with Request for Restraining Order and Injunctive Relief" against Leventhal and CCP. According to the complaint, Leventhal and CCP had libeled and slandered title to the Property through the Affidavit and the Notification of Non-Compliance, and had damaged Cumberland Development by causing Cumberland Development to be unable to obtain title insurance in connection with the sale of Property lots. In addition to damages, Cumberland Development asked for an immediate restraining order against Leventhal and CCP against the continued publication of the Affidavit and the Notification of Non-Compliance so that Cumberland Development could obtain the title insurance necessary for completing the sales of homes located on the Property.

*The Hearing.* On January 8, 2003, the trial court held a hearing on Cumberland Development's request for a temporary restraining order. The trial court heard arguments from Cumberland Development's counsel and from Leventhal, who represented himself in propria persona. Among those also present at the hearing were Clark and Hansell Smith, an attorney who was involved in closing the sales of homes located on the Property.

In argument before the trial court, Cumberland Development contended that Leventhal had filed the Affidavit and Notice of Non-Compliance with the intention of preventing Cumberland Development from marketing, developing, and selling the Property. Cumberland Development also produced a copy of the Sewer Easement Agreement, which had not been listed in the original complaint, and contended that its execution by Leventhal on behalf of Cumberland Development was fraudulent. Cumberland Development then asked for a temporary restraining order which Cumberland Development contended would allow the prospective homeowners to obtain title insurance and close the sales of homes located on the Property.

In response, Leventhal contended that his actions were within his rights as the managing declarant under restrictive covenants that remained applicable to the Property, and that the trial court did not have sufficient information before it to judge the merits of Cumberland Development's arguments. Leventhal then expressed his willingness to enter into a consent order under which the prospective home buyers could "move in instanter but the profits from those sales would stay in escrow." According to Leventhal, a temporary restraining order was "incorrect relief," and he expressed his opinion that what Cumberland Development was requesting was the cancellation of the Affidavit and the Notification of Non-Compliance. Leventhal offered "limited relief" in order to close the sales to the homeowners, and expressed concern about a conveyance of property "out from under our protection rights."

The trial court asked the parties to come up with a solution, and after a lunch break the hearing reconvened. After extended discussions centering mainly on whether and to what extent either party should be required to put up a bond in connection with any resolution, Leventhal offered to "release those construction loan lots, the lots for these folks fully, the roadbeds fully, estoppel certificates fully, without waiving legal claims for damages under it." The trial court then asked Leventhal to sit down with attorney Smith, who was aware of what was required to satisfy the title insurers, and "draw an outline of what he needs, and let's resolve this." After another recess the court reconvened and the following exchange occurred:

> The Court: So it's my understanding, Mr. Smith, and let's put it on the record that presented to me will be an order that will be signed by the parties and if not signed by the parties, I will sign it myself, that does what?
>
> Mr. Smith: It needs to reduce it to say that the two documents, we'll refer to the two documents that were filed and say that any claims are a monetary claim. Let me give you an example, Judge. If Mr. Leventhal, instead of filing

those things had [filed] a lawsuit against them for these damages, we would have closed all these things [b]ecause an ongoing suit doesn't impair title until its reduced to a judgment. It needs to say, and we've agreed on this language, that we have a release from all these different parties. He's going to have these different people that have interest in this other property also to sign. His wife, for example. . . . We've agreed that I will draft the part of the order dealing with clearing the title. . . . And Mr. Leventhal's agreed that I can draft that language subject to both of their approval, that will be acceptable to a title company that will be in your consent order that you sign.

The Court: Okay. That leaves the issue, then — was there any other issue with you?

Mr. Leventhal: No Sir, obvious — the preservation language and all that. But yes, that's the essence. And I've told Mr. Smith.

After this exchange, Cumberland Development's attorney represented that his client had agreed to put up a cash bond, and Leventhal indicated the bond would be acceptable to him. The hearing ended shortly thereafter.

*The Consent Order.* The Consent Order was filed on January 16, 2003. The trial court signed the order, which was prepared by Smith. There were no other signatories to the Consent Order. The Consent Order, as originally prepared, contained the following language, which is crossed through and the deletion initialed by the trial court: "[the parties] have consented to this Consent Order as evidenced by their respective signatures below." The basis for the Consent Order was that "the Court having reviewed the pleadings and exhibits of the parties, and having heard argument of the parties, [it appears] to the Court that the parties did consent to this Order during the hearing."

In relevant part, the Consent Order provides:

(i) *The Affidavit and Notice of Non-Compliance.* After specifically referencing these instruments, the parties agree that the Consent Order terminates any claims by Leventhal, CCP, or Clark, as receiver, as to the record ownership or fee simple title to the Property, excepting the right to seek monetary damages on account of such claims.

(ii) *The Sewer Easement.* Leventhal releases the Property from the Sewer Easement Agreement and agrees not to file any other instruments in Cumberland Development's name without further order of the Court.

(iii) *The Receivership.* The trial court confirms that it has conferred with the judge presiding over the Receiver Case, who has informed the Court that he has no objection to the case proceeding

with the entry of the Consent Order. In a subsequent paragraph, the Consent Order provides that "[t]he Receivership Case shall have no further jurisdiction over the Property, which is hereby released from said pending case. . . ."

(iv) *Estoppel and Release.* Leventhal, CCP, and Clark, as receiver, are estopped from asserting further claims against the Property. Leventhal, CCP, and Clark, as receiver, release claims to the Property, and "the release of the 'Property' from all such claims as set forth above is permanent, not subject to future appeal, to allow the free and unencumbered marketability of the 'Property' now and in the future. As to such matters, this is a Final Order."

(v) *Quitclaim Deeds.* Leventhal and CCP shall, "prior to the entry of this Order," present Cumberland Development with certain executed quitclaim deeds with the purpose of releasing any interest by the grantors of such quitclaim deed in the Property. Quitclaim deeds are required to be obtained from Leventhal, CCP, Dorothy Leventhal, Bank of North Georgia, Providence Construction Company, and Clark, as receiver, among others.

(vi) *Temporary Bond.* Cumberland Development is required to pay $25,000 into the registry of the Court as a temporary bond, not to exceed 30 days, and any requirement of Cumberland Development to continue the bond is subject to review by the Court at a future hearing.

*The Post Consent Order Hearings.* The trial court held a hearing on January 31, 2003. Cumberland Development requested the hearing pursuant to an emergency motion to obtain Leventhal's compliance with the Consent Order. Cumberland Development informed the trial court that Smith had prepared quitclaim deeds for Leventhal and Clark, as receiver, to sign, but "they won't sign them." Leventhal represented that he had negotiated the language of the quitclaim deeds with Smith, but maintained that he had been forced to appeal the Consent Order because Cumberland Development had called for a hearing. Leventhal then stated that he was willing to execute a quitclaim deed consistent with what he and Smith had agreed to, with the provision that the quitclaim deeds to the homeowners would survive even if the Consent Order was reversed on appeal. The trial court, Cumberland Development, and Leventhal then discussed, and the parties agreed on, certain language, including reservations of rights by Leventhal and CCP, to appear in the proposed quitclaim deed. During this discussion, counsel for Cumberland Development suggested that the Consent Order be vacated.

The trial court held another hearing on February 7, 2003, during which Leventhal agreed to execute another quitclaim deed with respect to 25 lots which had not been covered by the previous

quitclaim deed. The parties discussed the issue of this appeal. Cumberland Development's counsel referred to Leventhal's previous statement that "you cannot make an argument about appealing something you consent. . . . It would be frivolous." Leventhal responded that

> The appeal is not moot, the appeal, your honor, of the [Consent Order]. The [Consent Order] did not simply say to give the quitclaim deeds that have been voluntarily given and which we wanted to do all along. The [Consent Order] addresses the 10-foot easement which we have not consented to. The [Consent Order] states that there's permanent injunction under the surviving agreements that have not been cancelled for future events, that we can't file anything without first getting consent from the Court. There's extensive permanent injunction language in this order far beyond this injunctive relief.

As shown by the foregoing, the trial court had no basis for its finding that "having heard argument of the parties, [it appears] to the Court that the parties did consent to this Order during the hearing." It is obvious from the hearing transcript that material terms of the Consent Order were discussed by Leventhal and Smith outside the presence of the trial court, and the trial court could not know what Leventhal had consented to. Although the trial court states his intent to sign the Consent Order even if the parties did not sign it, Leventhal's silence in the face of that statement must be seen in the context of Smith's immediately following representation that he would prepare the Consent Order subject to the approval of the parties. There was no basis for Leventhal to have impliedly accepted the entry of a Consent Order to which he had not agreed.

In addition, the terms of the Consent Order go beyond what Leventhal had expressly or impliedly agreed to during the hearing. For instance, there is no indication that Leventhal agreed to cancel the Sewer Easement Agreement. The Consent Order also seems to be prematurely entered under its own terms as there is no evidence that the numerous third-party quitclaim deeds were obtained before the entry of the Consent Order, as the document itself contemplates. We also reject Cumberland Development's contention that the execution and delivery by Leventhal of two quitclaim deeds after the entry of the Consent Order show that Leventhal had accepted the Consent Order as valid. Leventhal clearly maintained in the hearings in which he agreed to execute and deliver the quitclaim deeds that he disagreed with and had not consented to the Consent Order.

Given that (i) the Consent Order was not signed by the parties, (ii) the transcript of the January 8, 2003 hearing does not show that

Leventhal agreed to the terms of the Consent Order as it was actually entered, (iii) Leventhal and Smith negotiated terms of the Consent Order outside the courtroom, and (iv) Leventhal's actions after the entry of the Consent Order do not show his acceptance of the Consent Order, we conclude that the trial court erred in concluding that the parties agreed to the Consent Order. Because there is no basis, other than the consent of the parties, for the relief granted by the Consent Order, the Consent Order must be vacated and the cases remanded below.

2. We also consider certain of Leventhal's additional claims of error insofar as they challenge the jurisdiction of the trial court.

(a) Leventhal contends that the superior court clerk, consistent with Uniform Superior Court Rule 3.2,[6] would have assigned this case to the judge who was overseeing the Receiver Case if Cumberland Development's attorneys, in filing the original complaint, had complied with USCR 4.8.[7]

We conclude that, regardless of whether USCR 3.2 and 4.8 applied, the trial court was authorized to hear the motion for temporary restraining order. Judge Nix, who presided over the Receiver Case, issued an order on January 6, 2003, concluding that this case had been properly assigned to Judge Stoddard by the superior court clerk, and that Cumberland Development was authorized to pursue a temporary restraining order before Judge Stoddard, or before any presiding judge as allowed by the rule of the Court. Considering that USCR 3.2 is not mandatory,[8] and that Judge Nix was aware of the information required to be disclosed by USCR 4.8, we find no merit in Leventhal's assertions of error insofar as he challenges the jurisdiction of the trial court to hear Cumberland Development's motion for a temporary restraining order.

(b) Judge Schuster presided at the January 8, 2003 hearing on Cumberland Development's motion for a temporary restraining order, and issued the Consent Order, while sitting in for Judge Stoddard. Leventhal takes exception to the February 3, 2003 order in

---

[6] USCR 3.2 provides, in relevant part, that "When practical, all actions involving substantially the same parties, or substantially the same subject matter, or substantially the same factual issues, whether pending simultaneously or not, shall be assigned to the same judge."

[7] USCR 4.8 provides:
> At any time an attorney is counsel in any action which the attorney knows is or may be related to another action either previously or presently pending in and assigned to a particular judge of a superior court in the same circuit involving some or all of the same subject matter, or some or all of the same factual issues, such attorney immediately shall so advise the judges involved, who will then make an appropriate determination as to which judge the action or actions should be assigned.

[8] *Tokars v. Superior Court of Cobb County*, 264 Ga. 180, 181 (442 SE2d 454) (1994).

which Judge Stoddard assigns this case to Judge Schuster.[9] Leventhal asserts that Judge Schuster does not have the staff to support this litigation, and refers to OCGA §§ 9-8-1, 9-8-5, and 9-11-24. This is apparently an attack on the failure of Judge Stoddard to assign the case to Judge Nix.

OCGA § 9-11-24 addresses intervention and OCGA § 9-8-1 addresses the appointment of a receiver for property, and neither are directly applicable to the assignment of this case to Judge Schuster. OCGA § 9-8-5 provides that "[w]here property has been placed in the hands of a receiver, all persons properly seeking to assert equitable remedies against such assets shall become parties to the case by intervention and shall prosecute their remedies therein." Arguably, if the Property remained in the receiver's name and if Cumberland Development sought equitable remedies against the Property, such remedies would only be available through intervention in the Receiver Case before Judge Nix. However, the record shows that the receiver had previously transferred the Property to CCP before it was sold to Cumberland Development, and, furthermore, Clark, as receiver, was not named as a defendant. We are unable to determine the extent that, as claimed by Leventhal, the Property nevertheless remains subject to orders entered in the Receiver Case, and equitable remedies pursued by Cumberland Development affect the rights of Clark, as receiver. Even if Leventhal is correct, Cumberland Development's action is against Leventhal and CCP, and not Clark, as receiver, and includes claims for monetary damages. Leventhal has not shown that this case, as so constituted, could not be heard by Judge Schuster. As to Leventhal's staffing argument, Leventhal has shown no legal or factual basis for questioning the fitness of Judge Schuster as being "absent the staff to support the complex litigation." Accordingly, we see no basis for Leventhal's challenge to the February 3, 2003 order.

In view of our conclusions in Division 1, we need not consider Leventhal's additional enumerations of error.

*Judgment vacated and cases remanded. Smith, C. J., and Phipps, J., concur.*

DECIDED MAY 13, 2004 —
RECONSIDERATION DENIED JUNE 16, 2004.

*Clark & Clark, Herman Clark, Lee M. Bagel,* for appellant.

---

[9] See USCR 3.3: "[A]n assigned judge may transfer an assigned action to another judge with the latter's consent in which event the latter becomes the assigned judge."

Ronald S. Leventhal, *pro se.*
*Glen E. Stinson*, for appellee.