### A02A1122. GREENWAY INSURANCE AGENCY v. GFA BUSINESS SOLUTIONS, INC. et al.
(574 SE2d 345)

POPE, Senior Appellate Judge.

Greenway Insurance Agency appeals a verdict entered against it arising out of allegations that it breached an oral agency agreement to procure workers' compensation insurance on behalf of its client. Greenway Agency contends that the trial court should have granted its motion for a directed verdict because the agreement was too vague to be enforced as a matter of law. It also argues that the trial court erred by failing to give a jury charge on contract modification and by prohibiting introduction of certain evidence. This is the second appearance of this case in this Court.[1]

1. The standard of appellate review of both a motion for directed verdict and a motion for judgment notwithstanding the verdict is the any evidence test. *Pulte Home Corp. v. Woodland Nursery &c.*, 230 Ga. App. 455, 456 (2) (496 SE2d 546) (1998).

> The question before this court is not whether the verdict and the judgment of the trial court were merely authorized, but is whether a contrary judgment was demanded. A judgment n.o.v. is properly granted only when there can be only one reasonable conclusion as to the proper judgment; if there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is not error to deny the motion.

(Citations and punctuation omitted.) Id. See also *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 237 (3) (547 SE2d 637) (2001).

Construed in favor of the verdict the evidence shows that Jimmy Selph, after years in contracting and other businesses, decided in late 1994 to start a new career in what he referred to as "employee leasing." Selph became interested in that business when as a contractor he had for a time been a customer of a similar business. According to Selph, employee leasing involves contracting with businesses having a small number of employees to create a co-employment relationship vis-à-vis the client's employees. The employee leasing business assumes responsibility for all administrative aspects of employment including, for example, federal and state taxes, unemployment taxes, Social Security, health insurance, and workers' compensation insurance. The client business retains responsibility for hiring, firing, and all other aspects of supervising the employees in their day-to-day

---

[1] See *GFA Business Solutions v. Greenway Ins. Agency*, 243 Ga. App. 35 (531 SE2d 134) (2000).

activities. One aspect of the employee leasing business involves obtaining workers' compensation insurance to cover the employees of each client company.

In that regard, Selph approached Greenway Agency because he knew that it had provided a similar service for another employee leasing business. Selph met with Glynn Greenway, the then president and owner of Greenway Agency, in December 1994, and Greenway referred him to Peter O'Malley whom Greenway described as his office manager who would "take care of all [Selph's] needs." According to Selph, O'Malley agreed to obtain workers' compensation insurance sufficient to cover Selph's business and all of its clients for 1995, and again, one year later over the telephone for 1996, and again in 1997. The agreement was the same each year.

Beginning in January 1995, Selph incorporated three companies, FGA Business Solutions, Inc., GFA Business Solutions, Inc., and GFA Group, through which he operated his employee leasing business. Selph is the sole owner of each corporation.

In 1995, because Selph's business was only just beginning, O'Malley asked for an estimate of the first year's client payroll, and he based the cost of coverage on that estimate. He determined that Selph was required to pay $4,750 as a deposit, and he arranged financing for the balance. Selph's companies FGA and GFA made the agreed payments. In anticipation of an audit by Greenway Agency at the end of the year, Selph's companies made an estimated payment, based on information supplied by Greenway Agency, of $40,000 in December to account for increased business. Thereafter, as Selph added more customers to his businesses, he contacted O'Malley to obtain the increase in the premium. At the beginning of 1996, his companies again paid a deposit for the year (this time $20,000), made an estimated payment of $100,000 in July of that year (which Selph handed directly to Mr. Greenway), and made another estimated payment of $50,000 in December. Selph's companies made the estimated payments in anticipation of an insurance audit by Greenway Agency that would have determined the precise amount due. O'Malley regularly assured Selph that an audit would be forthcoming, but it never happened. From early 1995 through March 1997, Selph's companies paid Greenway Agency over $220,000.

During that time, whenever Selph's customers needed to show proof of insurance to their own customers, they contacted Selph, and he contacted Greenway Agency and requested certificates of insurance to show that the employees had coverage. Greenway Agency would then mail a certificate to the customer's customer and, although not initially, would send a copy to Selph. Greenway Agency issued over 300 certificates of insurance between early 1995 and early 1997. Each certificate showed Greenway Agency as the "Pro-

ducer" and either FGA or GFA together with a client company as the insured. The certificates indicated that the insured had workers' compensation coverage, and most showed policy effective dates and policy limits. Some of the certificates had policy numbers and others referred to a binder. Most of the certificates were signed by O'Malley as Greenway Agency's authorized representative, and one was signed by Glynn Greenway himself. Each certificate states, "This is to certify that the policies of insurance listed below have been issued to the insured named above for the policy period indicated. . . ."

In March 1997, Selph was informed by an investigator with the workers' compensation board that his companies did not have workers' compensation insurance. It is undisputed that neither O'Malley nor anyone else at Greenway Agency ever obtained a policy. Selph immediately obtained the necessary insurance for his businesses from another source. He then brought this suit in the name of his companies against Greenway Agency for, among other things, breach of contract.

In response to a motion for summary judgment, the trial court essentially found that no contract existed between Selph's companies and Greenway Agency. In the earlier appeal, this Court reversed and held that an insurance company may be held liable for fraud, misconduct, or negligence of an agent in an action for breach of a contract to procure insurance between an insurance agency and its client, "as long as there is evidence that the parties entered into such a contract and the contract was breached." *GFA Business Solutions v. Greenway Ins. Agency*, 243 Ga. App. 35, 36-37 (1) (531 SE2d 134) (2000).

At trial, as shown above, Selph presented just such evidence. There was evidence that O'Malley had authority to bind Greenway Agency, that the Greenway Agency knew what type of insurance Selph's business needed, that the parties entered into an oral agency agreement to procure insurance, that Selph's companies paid the premiums, and that no policy was ever obtained. See *GFA Business Solutions*, 243 Ga. App. at 37 (1).

Greenway Agency contends that no contract exists as a matter of law because the parties to the contract were not sufficiently identified. At one point Selph testified that the agreement was between Greenway Agency and himself; later he explained that he meant as the president of his corporations. Also, none of Selph's businesses were incorporated in December 1994 when he met with O'Malley. But,

[t]he law does not favor destroying contracts on the basis of uncertainty, and a contract that may originally have been indefinite may later acquire more precision and become enforceable because of the subsequent words or actions of

the parties. Because the determination of whether a contract contains the requisite certainty must be made at the time enforcement is sought, an objection of indefiniteness may be obviated by performance on the part of one party and the acceptance of the performance by the other. *Steinemann v. Vaughn & Co.*, 169 Ga. App. 573, 577 (313 SE2d 701) (1984).

*Sanders v. Commercial Cas. Ins. Co.*, 226 Ga. App. 119, 121 (1) (485 SE2d 264) (1997).

Here, FGA and GFA made all the premium payments, Greenway Agency accepted those payments, and the certificates of insurance issued by Greenway Agency showed those companies as the insured. This constitutes some evidence that FGA and GFA were the parties to the agreement with Greenway Agency. See *Sanders*, 226 Ga. App. at 121 (1); *Steinemann*, 169 Ga. App. at 577.

Neither do we find that the term of the agreement or the consideration for the agreement is too indefinite. There was evidence that the parties agreed each year to renew the agreement. And " '(a)n employment contract containing no definite term of employment is terminable at the will of either party. . . .' " *Ford Clinic v. Potter*, 246 Ga. App. 320, 322 (540 SE2d 275) (2000). Second, even though Selph did not clearly understand how Greenway Agency was to be paid, it is a reasonable inference that the agency was going to receive either a commission on any policy that it procured on behalf of Selph's companies or a portion of the payments made by those companies. Greenway Agency told Selph the amount of the required down payment, explained how to calculate premiums, and told Selph to expect an audit where the final payment each year would be determined. We find sufficient detail to support the trial court's denial of the motion for directed verdict on this point.

2. Greenway Agency argues that the trial court erred by failing to give a charge on contract modification. See OCGA § 13-4-4. It argues that the fact that Greenway Agency began personally to pay workers' compensation claims filed under the alleged policies suggests that the parties may have modified the agreement from one to procure insurance to one to provide insurance. But, it fails to show that Selph or his companies were aware of any such change at the time that it occurred. The evidence cited by Greenway Agency only shows that Selph became aware of this fact after he became aware that no policy had ever been issued. And Greenway Agency fails to cite any other evidence that would suggest the original agreement was altered. The only testimony presented on the point was that the agreement remained the same from year to year. Therefore the court did not err by refusing to give the charge. See *Wadkins v. Smallwood*,

243 Ga. App. 134, 139 (5) (530 SE2d 498) (2000) ("A request to charge must embody a correct, applicable and complete statement of law, legal and perfect in form and adjusted to the pleadings and evidence. . . .").

3. Finally the trial court did not err by granting a motion in limine regarding O'Malley's embezzlement from Greenway Agency and from the payments made by Selph's companies. Selph argued that the fact that O'Malley took the money was not relevant to the breach of contract claim and that it could prejudice the jury in favor of Greenway Agency. On appeal, Greenway Agency only argues that the information would have been relevant to the question of whether the parties had agreed to a modification of the contract. But again, Greenway Agency's argument is based on an assumption that Selph or his companies were aware that the agency, rather than an insurance company, was making claim payments. And there is no evidence to support that assumption. A decision to admit or exclude evidence including relevant evidence is reviewed for abuse of discretion. *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 902-903 (2) (517 SE2d 365) (1999). We find no abuse here.

*Judgment affirmed. Ruffin, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 29, 2002 —
RECONSIDERATION DENIED NOVEMBER 18, 2002

*Michael T. Thornton*, for appellant.
*Gambrell & Stolz, Seaton D. Purdom, Robert G. Brazier, Gregory G. Schultz*, for appellees.