A05A1035, A05A1036. ALIMENTA (USA), INC. v. OIL SEED SOUTH, LLC et al.; and vice versa.
(622 SE2d 363)

BARNES, Judge.

Alimenta (USA), Inc. sued Oil Seed South, LLC, to enforce the indemnity provisions in the parties' contract. Alimenta also sued Oil Seed's owners, Roy Harris and Ronney Ledford, to enforce their personal guarantees. The defendants counterclaimed for fraudulent inducement and breach of fiduciary duty. The trial court granted summary judgment to Alimenta on Oil Seed's claim of fraudulent inducement, and granted summary judgment to Oil Seed on Alimenta's claim to enforce the contract's indemnity clause and the personal guarantees. Both parties appeal the trial court's order, and for the reasons that follow, we affirm.

This contract construction case involves a failed cottonseed oil plant, in which Alimenta, a large company, entered into a joint venture agreement with Oil Seed and its owners, Harris and Ledford, to build a 400-ton per day oil processing plant. Alimenta and Oil Seed signed an operating agreement which gave each of them 50 percent of the new company, Mid Georgia Processing, LLC, and Alimenta and Oil Seed each contributed an initial $1.5 million capital to Mid Georgia. Harris and Ledford personally guaranteed certain debts up to $1.5 million. Alimenta also guaranteed certain debts, and Oil Seed agreed to indemnify Alimenta for half of those debts. Alimenta was

named manager of the joint venture, with full responsibility and authority to manage its affairs.

Shortly after the parties formed the company, cottonseed oil prices dropped unexpectedly, and the parties had to infuse the new venture with additional capital and incur additional debt to keep it going. Alimenta advanced more money to the company, then elected to convert some of its loans to capital contributions, which Oil Seed did not match. Thus Alimenta's ownership increased to 51 percent, and it subsequently sold Mid Georgia to Golden Peanut Company, part of which Alimenta owns.

Alimenta sued Oil Seed for indemnification of $3,032,987, which is 50 percent of its capital contributions, and sued Harris and Ledford for repayment pursuant to their personal guarantees of up to $1.5 million each. The defendants answered, denying liability, and counterclaimed for breach of fiduciary duty and fraud. After extensive discovery, both parties moved for summary judgment. In a thorough, well-reasoned order, the trial court granted summary judgment to Alimenta on the defendants' fraud claim, and granted summary judgment to the defendants on Alimenta's indemnity and guarantee claims. Both parties appeal the trial court's ruling.

In this State, "[t]he cardinal rule of contract construction is to ascertain the intention of the parties." *Mountain Aire Realty v. Birdie White Enterprises*, 265 Ga. App. 366, 368 (593 SE2d 900) (2004). "Further, a contract should be construed by examining the agreement in its entirety, and not merely by examining isolated clauses and provisions thereof. [Cits.]" *Duffett v. E & W Properties*, 208 Ga. App. 484, 486 (2) (430 SE2d 858) (1993).

> At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. (Cit.)

*Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999). "The existence or nonexistence of an ambiguity is a question of law for the court." (Punctuation omitted.) *Southeast Atlantic Cargo Operators v. First State Ins. Co.*, 197 Ga. App. 371, 372 (398 SE2d 264) (1990). If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but

rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2. Id.

## Case No. A05A1035

1. Alimenta contends that the trial court erred in interpreting the contract to mean that it was entitled to indemnification and personal guarantees only for third-party loans, and not for its own loans. It asserts that, contrary to the trial court's holding, it does not seek to recover its capital contributions. It further contends that the contract should not be construed against it, and that if the contract is ambiguous, a jury should resolve the ambiguity.

Alimenta argues that the trial court misinterpreted the contract and misunderstood its indemnity and guaranty claims, because it seeks repayment only for loans to Mid Georgia, not for capital contributions. The issue boils down to the construction of two subparagraphs within Section 4, "Capital Contributions and Capital Accounts," Subsection 4.4, "Member Loans: Indemnification of Alimenta." Subparagraph (a) provides that if Alimenta determined that Mid Georgia needed additional money, it would request it of the members pro rata. If a member did not respond by lending more money, then other members had the option to lend Mid Georgia the nonparticipating member's share. Any such "excess loans" could later be converted to capital contributions, which would alter the members' ownership percentages.

Subparagraph (c) reveals that the members anticipated that Alimenta would at times have to guarantee the repayment of some of Mid Georgia's indebtedness and pledge some of its assets as collateral. Oil Seed agreed to indemnify 50 percent of Alimenta's guarantee obligations, which are defined as

> any and all payments, costs, losses, liabilities and expenses . . . suffered, paid and/or incurred by Alimenta without reimbursement by the Company arising from Alimenta's Guarantee and/or the loss by Alimenta of any of Alimenta's Collateral by reason of the foreclosure thereof or other realization thereon by a lender to the Company or to Alimenta for the benefit of the Company.

Alimenta now argues that the indemnification provision in subparagraph (c) applies to loans it made to Mid Georgia under subparagraph (a). It states that a significant portion of Mid Georgia's startup costs were funded by a third-party lender, with Alimenta guaranteeing the loans. Certain bank covenants required Alimenta to advance money to Mid Georgia, Alimenta contends.

Alimenta's claim that it is entitled to indemnity based on its member loans made under Subsection 4.4 (a) is not supported by a reasonable construction of the contract. The provisions for loans and for guarantee indemnification are set out in different subparagraphs, and each is self-contained. The indemnity provisions of subparagraph (c) apply only to Alimenta's guarantees, not to Oil Seed's, while the loan and capital conversion provisions in subparagraph (a) apply to all members. Further, because Harris and Ledford personally guaranteed Oil Seed's debt to Alimenta, they would only be liable if Oil Seed were liable.

Based on the plain language of the contract, the trial court did not err in granting summary judgment to the defendants on Alimenta's indemnity and personal guaranty claims.

### Case No. A05A1036

2. Oil Seed, Harris and Ledford contend that the trial court erred in granting summary judgment to Alimenta on their fraud claim. They contend that, despite the contract's merger clause, they can sue Alimenta for any fraudulent inducements that violate Georgia's Limited Liability Company Act, OCGA § 14-11-305 (1),[1] because the contract specifically incorporates the Act. Because the Act prohibits self-dealing transactions without disclosure to the other partners, the defendants argue, any such self-dealing is actionable, even if it predated the contract.

The contract states that "[t]his Agreement is the entire agreement among the parties with respect to the subject matter hereof. This Agreement supersedes all prior agreements and oral understandings among the Members with respect to such matters."

> In written contracts containing a merger clause, prior or contemporaneous representations that contradict the written contract cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties, nor would the violation of any such alleged oral agreement amount to actionable fraud.

(Citations and punctuation omitted.) *First Data POS v. Willis*, 273 Ga. 792, 794-795 (2) (546 SE2d 781) (2001).

Further, if the contract terms are more specific than the Act's provisions, the contract terms should prevail. See *Tower Projects v.*

---

[1] "A member or manager shall act in a manner he or she believes in good faith to be in the best interests of the limited liability company and with the care an ordinarily prudent person in a like position would exercise under similar circumstances."

*Marquis Tower*, 267 Ga. App. 164, 166 (1) (598 SE2d 883) (2004). The contract provided that *any* member could engage in conflict of interest transactions, and that as manager, Alimenta was allowed to compete directly with Mid Georgia and had "complete control of the management of the Company's business and affairs." Finally, the contract provided that the company's purpose or scope could change with the consent of 51 percent of the members, which percentage Alimenta held as of June 1998. The trial court did not err in granting summary judgment to Alimenta on Oil Seed's fraud claim.

*Judgments affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED SEPTEMBER 23, 2005 —
RECONSIDERATION DENIED OCTOBER 24, 2005.

*Hunton & Williams, Jerry B. Blackstock, Ashley F. Cummings, Brooke F. Voelzke*, for appellant.

*Gregory, Christy, Maniklal & Dennis, Hardy Gregory, Gary C. Christy, Preyesh K. Maniklal, Hilary A. Wayne*, for appellees.