A06A1072. NOORANI C-STORES, INC. v. TRICO V PETROLEUM, INC. et al.
(637 SE2d 208)

ANDREWS, Presiding Judge.

Noorani C-Stores, Inc. (C-Stores), owned by Shaukat Karim Noorani (Noorani), appeals from the trial court's grant of partial summary judgment to Trico V Petroleum, Inc. (Trico V), owned by Ali M. Jaferi, and denial of C-Store's motion for partial summary judgment on Noorani's contract claim arising from a business dispute regarding convenience store #924 (Count I of Amended Complaint).[1]

Summary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the nonmovant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). On appeal from a grant of a motion for summary judgment, we review the evidence de novo to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law. *Burdick v. Govt. Employees Ins. Co.*, 277 Ga. App. 391 (626 SE2d 587) (2006).

So viewed, the evidence was that, in 2000, Jaferi's company Trico V had entered into a master lease of 41 gas stations in the Atlanta area. The properties were owned by others and leased to Trico V. Trico VIII also had gas stations in the area, although nothing in the record indicates whether they were leased or owned by Trico VIII.

Jaferi met Noorani in July 2000, through Jaferi's brother-in-law, Irfan Ali. According to Ali, Noorani was looking for some gas stations to buy and Ali was aware that Jaferi had a number in the area. Jaferi and Noorani briefly discussed four convenience stores/gas stations available and Jaferi jotted down some figures on a piece of paper. Neither Jaferi nor Noorani signed this two-page handwritten document. On July 31, 2000, however, Noorani signed four Commercial Sublease Agreements, one for each of these stores, including the one at 809 Thornton Road, Lithia Springs, Georgia, "Store #924." These subleases were between Trico V and C-Stores, were signed by both

---

[1] Although summary judgment was also granted to Trico V and Trico VIII Petroleum, Inc., an affiliated company, on several other claims involving Store #924 and three other stores, no appeal has been taken from these judgments.

Jaferi and Noorani, and were for five years. Noorani acknowledged that he was, in essence, leasing the businesses of the convenience stores and gas stations from Trico V and did not purchase the buildings or realty. Noorani paid Trico V rent, insurance, and for the gas distributed at the stations for a number of months.

Also, in July 2000, Closing Statements reflecting the purchase by C-Stores from Trico V of the businesses of all four stores were signed by Noorani and Jaferi, along with two promissory notes for each store reflecting balloon payments due to Trico V on September 15, 2000, and February 1, 2001. According to Jaferi, these documents represent the first effort by C-Stores to purchase the businesses of the four stores, but the transactions were never completed because C-Stores did not make the balloon payments required in the promissory notes. The closing statements do not provide any mechanism for the repurchase by Trico V or any other entity of the businesses from C-Stores. At some point prior to March 2001, following C-Stores' default under the balloon notes, Trico V took over possession of Store #924 pursuant to the terms of the July 2000 commercial sublease agreement.

By September 2000, Noorani realized that the four stores were not going to be as profitable as he anticipated. Noorani claims that Jaferi, through Trico V, orally agreed to repurchase the four stores if Noorani was not satisfied within six months of leasing them. According to Noorani, Jaferi made this statement during their initial discussions prior to the signing of the Commercial Sublease Agreements.

On December 21, 2000, the Agreement which is the subject of Count I of the Amended Complaint was signed. It states, in pertinent part:

> This agreement made effective the 21st day of DECEMBER 2000, by and between TRICO V . . . (LANDLORD) and SHAUKAT NOORANI and Noorani C-Stores, Inc. . . . (TENANT). Tenant currently leases Three premises which are more perticularly [sic] described on EXIBIT [sic] "A" atteched [sic] hereto and incorporated heren [sic] by reference (THE PREMISES)[.] Additionaly [sic], Tenant had purchased the goodwill located at the premises for the total sum of $six hundred and nine thousand ($609,000), which was paid by Tenant to Landlord in cash.
>
> Now tenant wishes to cancel the leases of the Premises and Landlord and Tenant is [sic] agree to the following.
>
> Landlord will cancel the leases and refund the tenants the sum of $six hundred and nine thousand ($609,000) plus

inventory at the time of taking possession of the premises on or before JANUARY 31st, 2001. Payment will be made in the following manner:

Cancellation of the promissory notes outstanding in the amount of approximately $Two hundred and five thousand and the balance in cash.

The Agreement was signed by an "S. Ali (V. PRESIDENT)" for Trico V, Landlord, and by Noorani, individually, and for C-Stores for Tenant. Attached to the Agreement as Exhibit A is a sheet listing the four stores subject to the Commercial Sublease Agreements signed July 31, 2000, including Store #924. An additional attached sheet contains the following computation:

| | | |
|---|---|---|
| 3 STORES @ 195,000 = | | $585,000 |
| 1 STORE @ 170,000 = | | $170,000 |
| | total | $755,000 |
| USA G financing | | $205,000 |
| Total due to NOORANI C-STORES by USA G after deduction of note | | $550,000 |
| 1st and last month security deposit for 3 location | | $45,000 |
| 1st and last month security deposit for 1 location | | $14,000 |
| | | $59,000 |
| Total due to Noorani c-stores by USA G after deduction of note plus security deposit | | $609,000 |

According to Noorani, he and S. Irfan Ali, Jaferi's brother-in-law, were in an office with a secretary and Jaferi was on a speaker phone while the terms of this agreement were being discussed and prepared into the written document. Noorani heard and recognized Jaferi's voice over the phone.

Ali deposed that he had not seen this Agreement prior to the litigation and that the signature on it was not his. He acknowledged, however, that he did work for USA Grocers Cigarette Distribution, which provided cigarettes to the sublessors of Jaferi's companies' convenience stores. Also, he acknowledged that the signatures of the witness on four March 29, 2001 Purchase Agreements, discussed below, were his. His signature appears five times on each document.

Finally, on March 29, 2001, four purchase agreements were entered into between Trico VIII Petroleum, Inc., as buyer, and Noorani C-Stores, Inc. and Noorani individually, as seller, one each

for Store #924 and the other three convenience stores involved. The agreement for Store #924 reflected a purchase price of $195,000, plus sums to be determined for inventory, cash deposits and other items. All the agreements were identical except for the store identification and purchase amounts, and included as a condition precedent to the completion of the sale the obtaining of bank financing satisfactory to Trico VIII. The agreements also contained, as paragraph 19 K, a clause stating that "[t]he foregoing and Exhibits attached thereto constitute the entire Agreement and understandings of the parties on the subject hereof and supersede all prior agreements and understandings relating to the subject matter hereof."

Financing was obtained for the other three stores and the transactions for these stores were completed. No financing was obtained for Store #924, however, resulting in this litigation.

The trial court concluded that the merger clause in the March 29, 2001 agreement between Trico VIII and C-Stores/Noorani precluded enforcement of the December 21, 2000 agreement between Trico V and C-Stores/Noorani and, further, that the December 21, 2000 contract was too vague to be enforceable.

1. We first consider the trial court's finding of contract vagueness.

"An issue of contract construction is usually a question of law for the court to resolve." *NEL v. DWP/Bates Technology*, 260 Ga. App. 426, 427 (1) (579 SE2d 842) (2003). Accordingly, it is subject to de novo review. See *Hill v. Centennial/Ashton Properties Corp.*, 254 Ga. App. 176, 177 (1) (561 SE2d 853) (2002). The following three principles guide us in our construction of contracts:

> First, if no ambiguity appears, the . . . court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. That is, where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Secondly, if [an] ambiguity does appear, the existence or nonexistence of an ambiguity is a question of law for the court. Finally, a jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.

(Punctuation omitted.) *Atlanta Dev. v. Emerald Capital Investments*, 258 Ga. App. 472, 477 (1) (574 SE2d 585) (2002). "The law favors a construction that will uphold the contract as a whole, and the entire contract should be read in arriving at the construction of any part." Id. at 478.

Using these principles, we do not find that the December 2000 contract is vague. Compare *Greenway Ins. Agency v. GFA Business Solutions*, 258 Ga. App. 404 (1) (574 SE2d 345) (2002), with *Aukerman v. Witmer*, 256 Ga. App. 211, 212 (1) (568 SE2d 123) (2002). The trial court's conclusion that it was void for vagueness because it did not describe the property involved ignores the fact that the contract incorporates by reference the exhibit which lists the four stores involved, including Store #924.

> " 'As a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where . . . the provision to which reference is made has a reasonably clear and ascertainable meaning. (Cits.)' *Binswanger Glass Co. v. Beers Constr. Co.*, 141 Ga. App. 715, 717 (2) (234 SE2d 363) (1977). See also *Hartline-Thomas v. Arthur Pew Constr. Co., Inc.*, 151 Ga. App. 598, 599 (260 SE2d 744) (1979)." *Walls, Inc. v. Atlantic Realty Co.*, 186 Ga. App. 389, 390 (1) (367 SE2d 278) (1988).

*Dan J. Sheehan Co. v. Ceramic Technics*, 269 Ga. App. 773, 778 (3) (605 SE2d 375) (2004).

Nor is the fact that the first page states only three stores are involved constitute vagueness when all the pages of the document are considered together, as they must be. E.g., *Alimenta (USA), Inc. v. Oil Seed South, LLC*, 276 Ga. App. 62, 63 (622 SE2d 363) (2005).[2]

Therefore, the trial court erred in concluding this contract was void for vagueness.

2. Noorani/C-Stores also argue that there remains a genuine issue of material fact as to whether Ali was authorized to enter into the December 2000 contract on behalf of Trico V and whether he signed that contract on Trico V's behalf.

We agree. Taken with all inferences in favor of Noorani/C-Stores, there was evidence from which a jury could conclude that Ali did engage in the phone call with Jaferi as described by Noorani and that the terms of the resulting contract were discussed and agreed upon. As set out above, Ali was the brother-in-law of Jaferi and worked for USA Grocers Cigarette Distribution, which was also a Jaferi company.

Also, even though Ali denied that the signature on the December 2000 contract was his, there was evidence from which the jury could

---

[2] We also note that, even where a contract is found to suffer from vagueness, "an objection of indefiniteness may be obviated by performance on the part of one party and the acceptance of the performance by the other. [Cit.]" *Sanders v. Commercial Cas. Ins. Co.*, 226 Ga. App. 119, 121 (1) (485 SE2d 264) (1997).

decide otherwise, specifically his numerous signatures as a witness to the March 2001 contracts which could be compared by the jury to the signature on the December 2000 contract. Also, the jury would be charged with determining Ali's credibility on the issue of the December 2000 contract.

3. Finally, we agree with Noorani/C-Stores that the merger clause of the March 2001 contract does not control this matter.

The December 2000 and March 2001 contracts are not between the same parties. Trico V was the party in the December contract and Trico VIII was the party in the March contract. No explanation is given by the trial court, and we know of none applicable to the record before us, to explain how one corporation can rely on a merger clause in a contract entered into by another corporation. See *Kaesemeyer v. Angiogenix, Inc.*, 278 Ga. App. 434, 437 (1) (629 SE2d 22) (2006); *Chhina Family Partnership v. S-K Group &c.*, 275 Ga. App. 811, 812 (2) (622 SE2d 40) (2005); *Decatur North Assoc. v. Builders Glass*, 180 Ga. App. 862, 863 (1) (350 SE2d 795) (1986).

Therefore, the trial court also erred in granting summary judgment on this basis.

*Judgment reversed. Barnes and Bernes, JJ., concur.*

DECIDED AUGUST 30, 2006 —
RECONSIDERATION DENIED SEPTEMBER 21, 2006.

*Henry D. Frantz, Jr.*, for appellant.
*Roger F. Krause*, for appellees.