### A08A0910. ARROW EXTERMINATORS, INC. v. GATES CONDOMINIUM HOMEOWNERS ASSOCIATION, INC. et al.
(669 SE2d 421)

ANDREWS, Judge.

Arrow Exterminators, Inc., appeals from the trial court's grant of the Gates Condominium Homeowners Association, Inc.'s motion to enforce a settlement agreement and motion for partial summary judgment. Arrow argues that there was never a meeting of the minds as to the essential terms of the settlement and therefore no agreement was ever reached. We disagree and affirm.

This case arose out of a contract between Arrow and the Gates in which Arrow was to inspect the Gates's property for termites, re-treat for termites if necessary, and make repairs or replacements to the premises to remedy any damage caused by termites. At some point, the Gates began experiencing significant termite damage and looked to Arrow for payment for the repairs. Arrow began sending payments of $25,000 a month to the Gates in March 1999. Arrow discontinued payments in August 2002.

The Gates then sued Arrow, alleging, among others, fraud, breach of contract, negligent inspection, negligent treatment and breach of a settlement agreement. The trial court granted partial summary judgment to the Gates on its breach of a settlement agreement claim and that is the only issue before us on appeal.

1. Arrow contends that there is an issue of fact as to whether the parties agreed to all the terms of the settlement. Specifically, Arrow claims that it never agreed to pay for all termite-related damage but

only to make interim payments during the pendency of its lawsuit against its insurers.

In support of this argument, Arrow points to an August 12, 1998 letter from the Gates's lawyer to Arrow's lawyer referencing a tolling agreement between Arrow and the Gates during Arrow's suit against its insurers. The letter states: "Please ask Arrow to make a formal offer of interim payments to the Gates to assist in the mounting costs for the ongoing repair of the termite damage." Arrow also points to a September 16, 1998 letter from the Gates's attorney, stating: "please send me a formal proposal from Arrow to memorialize the agreement for Arrow to make interim payments to the Gates during the pendency of the litigated claim with TIG." Arrow claims that these letters show that it did not intend to pay for all termite damage but only to make good faith interim payments during the suit against its insurers.

As the Gates points out, however, there was no action taken as a result of those letters. Rather, Arrow began making payments in March 1999, after correspondence beginning with a January 8, 1999 letter from Jay Barber, Arrow's attorney, proposing to pay to the Gates amounts from $15,000 to $25,000 per month as follows: "This would be done with the older claims being paid first, and any subsequent payments would be applied to that unit owner until his or her claims were satisfied. Future payments would then be applied to the next oldest claim, and so on, *until all were paid*." (Emphasis supplied.)

Then, in a February 25, 1999 letter to the Gates's attorney, counsel for Arrow stated: "Arrow is willing to pay $25,000.00 per month . . . until the fall of this year when business demand softens. During the fall and winter months, the amount paid would vary downward, but in no event would be less than $15,000.00 per month." The letter also stated that "this offer is forwarded to you in the spirit of compromise and possible settlement of a disputed claim."

The Gates's attorney responded on March 12, 1999, accepting the offer: "With respect to Arrow's offer to pay $25,000.00 a month . . . to assist the severe financial burden its homeowners are experiencing, . . . please make the payment directly to the Gates." Thereafter, Arrow made approximately 41 payments to the Gates of $25,000 each before stopping payments in August 2002.

In determining whether a settlement agreement was reached, we note that:

> Compromises of doubtful rights are upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence. In considering the enforceability

> of an alleged settlement agreement, however, a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed. Absent such mutual agreement, there is no enforceable contract as between the parties. It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties. The settlement agreement alleged to have been created in this case would have been the product of the attorneys for the parties. As the existence of a binding agreement is disputed, . . . the proponent of the settlement(,) must establish its existence in writing. The writing which will satisfy this requirement ideally consists of a formal written agreement signed by the parties. However, letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice.

(Citation and footnote omitted.) *Mealer v. Kennedy*, 290 Ga. App. 432, 434 (659 SE2d 809) (2008).

Here, the agreement consists of letters prepared by the attorneys. The terms were clear and definite. Arrow was to make payments of between $25,000 and $15,000 per month, in the manner prescribed "until all [claims] were paid." Contrary to the earlier letters sent in 1998, the letters that form the settlement agreement do not make any reference to "interim" payments.

Moreover, Arrow began performing the contract immediately and the Gates accepted the ensuing payments for over three years. Therefore, even if there were some basis for finding some uncertainty in the agreement,

> the law does not favor destroying contracts on the basis of uncertainty, and a contract that may originally have been indefinite may later acquire more precision and become enforceable because of the subsequent words or actions of the parties. Because the determination of whether a contract contains the requisite certainty must be made at the time enforcement is sought, an objection of indefiniteness may be obviated by performance on the part of one party and the acceptance of the performance by the other.

(Citations omitted.) *Greenway Ins. Agency v. GFA Business Solutions*, 258 Ga. App. 404, 406-407 (574 SE2d 345) (2002).

Accordingly, for all the reasons discussed above, the trial court did not err in determining that Arrow and the Gates entered into a settlement agreement for payment of all termite-related damage.

2. Arrow also contends that in order for the court to find there was a binding settlement agreement, the offer accepted must be squarely on point with the offer made. Arrow claims that its offer was not accepted by the Gates but rather that the Gates's response constituted a counteroffer.

> It is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject-matter, and in the same sense. In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent.

(Citations omitted.) *Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391, 395 (297 SE2d 733) (1982).

Here, Arrow argues that in response to its offer to pay between $25,000 and $15,000 per month, the Gates's response was that it would only accept an offer to pay $25,000 per month, not a varying amount. We disagree. The attorney's letter unequivocally states that he is accepting the offer and requests that the checks be paid directly to the Gates. That the response only quoted the first part of the offer and not the entire letter does not negate the acceptance.

Arrow cites to *Frickey v. Jones*, 280 Ga. 573 (630 SE2d 374) (2006) in support of its argument. In that case, the Supreme Court found no binding agreement because the response to the offer imposed an additional requirement and therefore constituted a counteroffer not an acceptance. Id. at 575. That did not occur in this case. Moreover, as cited in Division 1, any uncertainty, if it existed, is obviated by performance on the part of Arrow and acceptance of that performance by the Gates. *Greenway*, supra at 406-407.

3. Arrow also contends that the trial court erred in striking the affidavit of Barber, Arrow's attorney. The Gates responds that the trial court properly struck the affidavit because Arrow refused to make Barber available for deposition. The record shows that although Arrow was informed that Barber's deposition would be solely as to the issue of the settlement agreement negotiated between the lawyers, Arrow filed a motion for protective order to prevent the Gates from taking Barber's deposition. The trial court granted Arrow's motion.

Arrow then submitted an affidavit from Barber in support of its

motion for summary judgment. In that affidavit, Barber quoted from the 1998 letters and stated that there was never a settlement agreement nor did Arrow agree to anything beyond the making of interim payments. The Gates responded to the motion for summary judgment and argued that Barber's affidavit should be stricken because it had not been allowed to depose Barber on this issue.

The trial court granted the Gates's motion to strike the affidavit and Arrow argued below and now on appeal that the trial court erred in doing so because the Barber affidavit is the conduit through which the critical August 12 and September 16, 1998 letters were placed in evidence. But Arrow cited to these letters on appeal and we considered both these letters in Division 1. We also considered Arrow's argument that the payments were only intended to be interim payments, the argument advanced in Barber's affidavit, and rejected it for the reasons set out in Division 1.

Likewise, the trial court considered the letters and the argument that the payments were only intended to be interim payments and decided that they were not relevant to the issue because they did not address the letters sent in 1999 which formed the agreement. Accordingly, Arrow has shown no harm due to the striking of the affidavit. See generally *Craig v. C & S Nat. Bank*, 142 Ga. App. 474, 476 (236 SE2d 166) (1977) ("Harm as well as error must be shown to authorize a reversal by this court.") (citations omitted).

*Judgment affirmed. Ruffin, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 27, 2008 —
RECONSIDERATION DENIED NOVEMBER 18, 2008 —

*Decker, Hallman, Barber & Briggs, Jay M. Barber, Hawkins & Parnell, Warner S. Fox, Christopher S. Keith*, for appellant.

*Bondurant, Mixson & Elmore, H. Lamar Mixson, Lisa R. Strauss*, for appellees.