**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 5, 2022**

# In the Court of Appeals of Georgia

A22A0480. SOUTHERN STAR ENTERPRISE CORPORATION v. MCDONALD WINDWARD PARTNERS, L.P.

REESE, Judge.

McDonald Windward Partners, L.P. ("MWP") sued Southern Star Enterprise Corporation ("Southern Star") (collectively, "the parties") seeking damages related to the breach of a commercial lease, in addition to attorney fees. Southern Star filed an answer and a counterclaim seeking to recover its security deposit. MWP subsequently filed a motion for partial summary judgment on its breach of contract claim and for summary judgment on Southern Star's counterclaim. The trial court granted MWP's motion, and Southern Star appealed. For the reasons set forth infra, we affirm in part and reverse in part.

Viewed in the light most favorable to Southern Star, as the non-moving party,[1] the record shows the following. The parties entered into a commercial lease agreement (the "Lease"), which allowed Southern Star to occupy property located in Forsyth County. The Lease's term began on August 1, 2016, and ran until August 31, 2019. Shortly before Southern Star occupied the property, the parties also entered into an agreement to abate the first two months of rent by 50 percent so long as Southern Star did not "default[ ] in its obligations under the Lease[.]"

Pursuant to the Lease, rent was due on or before the first day of each calendar month, and failure to pay rent within five days of the due date resulted in a late fee of five percent of the rent payment owed. "[F]ailure to pay such amount within ten (10) days [was] an event of default[.]" The Lease also required Southern Star to provide an estoppel certificate within ten days of a request by MWP, to maintain various types of insurance, and to provide a security deposit of $8,310. The Lease further provided that "[u]pon the occurrence of any event of default" by Southern Star, MWP could use the security deposit "to the extent necessary to make good any arrears of rent or other payments due [MWP] and any other damage . . . caused by such event of default." Finally, the Lease stated that "at the termination of this Lease

---

[1] See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

by lapse of time or otherwise, [Southern Star shall] deliver immediate possession of the Premises to [MWP]." However, in the case of a holdover tenancy, Southern Star would pay MWP "an amount equal to two hundred percent (200%) of the rent in effect on the termination date."

On December 14, 2016, MWP sent Southern Star a letter stating that Southern Star was in default, in part, for late rent payments, and that if it did not cure the defaults, the previously abated rent would become due and payable. MWP sent a subsequent letter stating that because Southern Star remained in default, the previously abated rent, in addition to late fees, were due and payable, and that MWP would use the security deposit to cover these amounts. The letter also demanded that Southern Star restore the security deposit to the original amount. Southern Star's counsel responded, asking MWP for a breakdown of the late fees so the parties could "settle this up."

MWP sent another letter in March 2017 stating that Southern Star remained in default for, inter alia, failing to make timely rent payments and for failing to restore the security deposit, which MWP had applied to the previous past-due rent and late fees.

The next letter MWP sent to Southern Star regarding late rent payments was on July 12, 2019, when it stated that Southern Star remained in default and owed fees for late rent payments from February 2017 to July 2019. MWP sent another letter in early August, again requesting that Southern Star pay these late fees and restore the security deposit to its original amount, and stating that MWP had learned from another tenant that Southern Star had damaged the premises.

MWP contacted Southern Star again in mid-August demanding that it vacate the premises and have all repairs completed by August 31, the end of the Lease's term, and that Southern Star would be liable for damages related to its failure to surrender the property.

On September 3, 2019, after the Lease's term had ended, MWP sent Southern Star a letter demanding possession of the premises because Southern Star "remain[ed] in possession of the Premises and [was] holding over." On September 10, MWP e-mailed Southern Star stating that to avoid an assessment of holdover rent (i.e., 200 percent of the base rent amount) and a dispossessory proceeding, Southern Star should reply by 10:00 a.m. the following morning indicating that Southern Star no longer claimed possession of the premises and that MWP could change the locks. Although Southern Star's counsel replied early the morning of September 11 that she

would try to reach Southern Star, when MWP did not receive an e-mail from Southern Star stating that it no longer claimed possession of the premises, MWP informed Southern Star that it would proceed as indicated in the previous e-mail.

Southern Star responded the same day that it had vacated the premises and removed all of its property on or before the end of the term, and that one of its employees had attempted to tender keys to a representative of MWP who had refused to accept them. Southern Star also advised that MWP could change the locks and that it had been free to do so since Southern Star had attempted to tender the keys. MWP responded that no such tender had occurred, but it proceeded to change the locks on September 12 and paid a total of $10,881.88 to repair the interior of the property.

MWP sued Southern Star for breach of contract and sought to recover damages under the Lease, and Southern Star filed a response and a counterclaim. Following a hearing, the trial court granted MWP's motion for summary judgment and awarded it $13,032.38 in damages and $2,001.12 in interest based on the "contractual interest rate of 8%" contained in the Lease. This appeal followed.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. . . . We apply a de novo standard of review to an appeal from a grant of summary judgment and view the evidence, and all reasonable

5

conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

With these guiding principles in mind, we now turn to Southern Star's claims of error.

1. Southern Star argues that the trial court erred in granting MWP's partial motion for summary judgment on its breach of contract claim. Specifically, Southern Star asserts that MWP was not entitled to summary judgment on the following issues: (1) damages stemming from repairs to the premises; (2) late fees; (3) prejudgment interest based on the rate contained in the Lease; and (4) holdover rent.

(a) *Repairs.* Southern Star argues that the trial court erred in granting summary judgment on MWP's claim for damages stemming from its repairs to the premises, in part, because MWP failed to establish the fair market value of the premises before Southern Star's occupancy.

This Court has held that

it is essential that the plaintiff prove with a reasonable degree of certainty and specificity the condition of the premises, or the portions of them in question, both at the inception and at the termination of the

---

[2] *Navajo Constr. v. Brigham*, 271 Ga. App. 128 (608 SE2d 732) (2004) (citations and punctuation omitted).

tenancy, *or that [it] show specific acts of waste or damage the results of which at the end of the term had not been repaired.*[3]

Here, although MWP did not offer evidence of the premises' condition before Southern Star's tenancy, it did present evidence of specific acts of damage that Southern Star failed to repair. In August 2019, MWP informed Southern Star that it had learned from another tenant that Southern Star had damaged the premises. Not only was such damage subsequently detailed in photographs and invoices describing the costs of the repairs, which MWP paid for, but Southern Star also submitted testimony that it had "bumped" the wall with a forklift and did not deny damaging the property. Thus, because MWP proved specific acts of damage committed by Southern Star, it was not required to establish the condition of the premises prior to Southern Star's occupancy.[4]

Additionally, although Southern Star makes a passing assertion that any property damage was excused because MWP failed to remove interior walls as the parties agreed, this argument is unpersuasive. While the Lease contained plans to

---

[3] *Spacemaker, Inc. v. Borochoff Properties*, 112 Ga. App. 512, 514 (1) (145 SE2d 740) (1965) (emphasis supplied).

[4] See *Abernethy v. Cates*, 182 Ga. App. 456, 457-458 (1) (356 SE2d 62) (1987).

remove interior walls on the property that were not completed, this does not excuse Southern Star's failure to refrain from damaging the walls.[5] To excuse this damage, Southern Star's "nonperformance must have been caused by conduct of [MWP] which made [its] performance useless or impossible."[6] Even though Southern Star offered evidence that its representative had informed MWP that "the walls made it harder to maneuver the forklifts in the Premises[,]" "[n]othing in this record . . . raises the issue that [MWP] made [Southern Star's] performance useless or impossible."[7] Thus, Southern Star's obligation to refrain from damaging the property's walls was not rendered impossible, and thereby negated, simply because the walls made maneuvering its forklift more difficult.

Finally, Southern Star asserts that MWP must prove its employees were negligent in damaging the walls to prevail on its claim for damages related to the repairs. While the Lease does state that "Tenant shall repair and pay for any damage caused by the negligence of Tenant, or Tenant's employees, agents or invitees, or

---

[5] See *Ott v. Vineville Mkt.*, 203 Ga. App. 80, 80-81 (1) (416 SE2d 362) (1992).

[6] Id. at 80 (1); see OCGA § 13-4-23.

[7] *L. D. F. Family Farm v. Charterbank*, 326 Ga. App. 361, 366 (3) (756 SE2d 593) (2014) (punctuation and footnote omitted).

8

caused by Tenant's default hereunder[,]" this language falls within the paragraph titled "LANDLORD'S REPAIRS" and does not specifically address any damage done to the premises' walls. The subsequent paragraph, in contrast, is titled "TENANT'S REPAIRS" and states, in part, that "Tenant shall not damage any wall or disturb the integrity and support provided by any wall and shall, at its sole cost and expense, promptly repair any damage or injury to any wall caused by Tenant or its employees, agents, or invitees." Thus, as this paragraph addresses the repairs required of Southern Star, and references damage to the property's walls without referencing negligence, the Lease when read as a whole does not require MWP to establish negligence in order to recover its repair costs.[8]

For these reasons, the trial court did not err in granting summary judgment on the issue of damages stemming from repairs made to the premises.

---

[8] See *Tower Projects v. Marquis Tower*, 267 Ga. App. 164, 166 (1) (598 SE2d 883) (2004) ("We should avoid any construction that renders portions of the contract language meaningless. When a provision specifically addresses the issue in question, it prevails over any conflicting general language.") (citation and punctuation omitted); see also *Noorani C-Stores v. Trico V Petroleum*, 281 Ga. App. 635, 638 (1) (637 SE2d 208) (2006) ("The law favors a construction that will uphold the contract as a whole, and the entire contract should be read in arriving at the construction of any part.") (citation and punctuation omitted).

(b) *Late Fees.* Southern Star argues that the trial court erred in granting summary judgment on the issue of unpaid fees assessed for late rent. Specifically, Southern Star asserts that the fees constituted unliquidated damages, and therefore the court should have required MWP to prove the actual damages it sustained. Southern Star also asserts that there was a question of material fact concerning whether MWP waived its right to collect these fees under the Lease.

OCGA § 13-6-7 states that "[i]f the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby." Paragraph 22 of the Lease states that "[i]n the event Tenant fails to pay any installment of rent hereunder within five (5) days after such installment is due, to help defray the additional cost to Landlord for processing such late payments, Tenant shall pay to Landlord a late charge in an amount equal to five percent (5%) of such installment[.]" Here, the Lease's language is clear; failure to pay rent within five days of the date due results in a five percent late fee based on the amount of rent payment due. As this language specified an agreed-upon amount in the case of a late payment, the fee constitutes

10

liquidated damages under OCGA § 13-6-7, and the parties were bound by the contracted amounts.[9]

Southern Star, however, summarily asserts that because the Lease states that these late fees "shall not be construed as liquidated damages," this means the fees should be treated as unliquidated damages, and MWP should have proven its actual damages to recover under the late-fee provision. This argument is unconvincing as this provision of the Lease, when read in the context of the entire agreement, is insufficient to alter the nature of these fees under OCGA § 13-6-7. Paragraph 22.A stated that in the case of a default by Southern Star, MWP may terminate the Lease and recover as liquidated damages "the worth, at the time of the award[ ]" of the unpaid rent "earned at the time of the termination[,]" and the amount by which any

---

[9] See *Turner v. Atlanta Girls' School*, 288 Ga. App. 115, 117 (653 SE2d 380) (2007) (holding that "[w]hile the enrollment contract here does not use the label 'liquidated damages,' the language used is that of a liquidated damages clause in that it clearly sets forth what the damages for a breach shall be") (footnote omitted). As Southern Star did not assert that the late fees constituted impermissible penalties, neither on appeal nor in the trial court, we will not consider this issue as it is beyond the scope of this appeal. See *Wyatt Processing v. Bell Irrigation*, 298 Ga. App. 35, 36 (679 SE2d 63) (2009) ("On appeal, this court does not review issues which were not raised and ruled on below.") (citation and punctuation omitted).

11

unpaid rent exceeded what MWP could have obtained to relet the property.[10]

Paragraph 22 also stated that if MWP terminated the Lease under this provision "remedies thereunder *constituting liquidated damages* shall be [its] exclusive remedies[.]"[11] Thus, reading the Lease as a whole, the language stating that fees for late rent payments were "not . . . construed as liquidated damages" was designed to differentiate the fees owed for late rent payments from amounts related to unpaid rent due in the case of a termination, and to specify that the late fees were not MWP's exclusive remedy in the event of a termination. Therefore, the plain language of the Lease shows that fees associated with late rent were liquidated damages.[12]

---

[10] The Lease also states that "worth at the time of the award" should be calculated by allowing interest (1) in the lessor of eight percent per annum or the maximum rate permitted by law for amounts sought up to the award or (2) six percent per annum for amounts sought for the balance of the Lease term after the time of the award.

[11] (Emphasis supplied).

[12] See *Crabapple Lake Parc Community Assn. v. Circeo*, 325 Ga. App. 101, 105 (1) (a) (751 SE2d 866) (2013) ("The cardinal rule of construction is to ascertain the intent of the parties. . . . To determine the intent of the parties, all the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred.") (citation and punctuation omitted); see also *Krupp Realty Co. v. Joel*, 168 Ga. App. 480, 481 (1) (309 SE2d 641) (1983) (holding that a late charge labeled as "additional rent" still qualified as liquidated damages under OCGA § 13-6-7).

12

Southern Star also argues that MWP waived its right to collect late fees by not sending notices regarding these fees from March 2017 to July 2019. However, when considering a possible waiver, "all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist."[13] Here, the Lease stated that "Landlord's acceptance of the payment of rent or other payments hereunder after the occurrence of an event of default shall not be construed as a waiver of such default, unless Landlord so notifies Tenant in writing." Moreover, there was no evidence that MWP intended to waive its right to such late fees. In fact, MWP repeatedly stated in its correspondence to Southern Star that, pursuant to OCGA § 13-4-4, it intended to rely upon the exact language of the Lease and the abatement letter, and that it would strictly enforce its rights. As this Court has stated,

> [w]here the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless [its] acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of the conduct is possible.[14]

---

[13] *Forsyth County v. Waterscape Svcs.*, 303 Ga. App. 623, 630 (2) (a) (694 SE2d 102) (2010) (citation and punctuation omitted).

[14] *Ochoa v. Coldwater Creek Homeowners Assn.*, 361 Ga. App. 267, 270 (1) (863 SE2d 730) (2021) (citation and punctuation omitted).

13

Thus, the trial court did not err in granting MWP's motion for summary judgment on the issue of damages stemming from unpaid late fees.

(c) *Prejudgment Interest.* Southern Star argues that the trial court erred in granting summary judgment on the issue of prejudgment interest. We agree.

The trial court awarded MWP $13,032.38 in "uncontested damages" and $2,001.12 in interest "based on the contractual interest rate of 8%[.]" The court based this award of interest on Paragraph 22.A of the Lease and used as the period to calculate the interest the date of MWP's first demand letter, September 26, 2019, and the date of the court's order, August 27, 2021. However, as noted above, Paragraph 22.A applies to damages available to MWP following its decision to terminate the Lease in the case of default by Southern Star. The demand letter referenced by the court was issued almost a month after the Lease's term expired and did not reference a termination of the parties' agreement. As the parties did not terminate the Lease pursuant to Paragraph 22.A, but instead sought to collect unpaid rent and fees and allow the Lease to continue until the end of the term, an award of interest was not available to MWP under the unambiguous terms of the parties' agreement.[15]

---

[15] See *Caswell v. Anderson*, 241 Ga. App. 703 (527 SE2d 582) (2000) ("Where contract language is unambiguous, no construction is necessary and the court must simply enforce the contract according to its clear terms."). Even assuming, arguendo,

Thus, under the plain terms of the Lease, MWP was not entitled to summary judgment on its claim for prejudgment interest.[16] Therefore, we reverse the trial court's ruling.

(d) *Holdover Rent.* Southern Star argues that the trial court erred in granting MWP summary judgment on its claim for holdover rent. Specifically, Southern Star argues that there was a question of material fact regarding whether Southern Star actually retained possession of the premises and thereby triggered the holdover provisions. We agree.

---

that interest under this paragraph was available, MWP would not have been entitled to an award of interest on the entire amount of damages as presented. The trial court awarded damages totaling $13,032.38 based on a variety of charges contained in an invoice MWP prepared and submitted to Southern Star on September 16, 2019. These charges included, inter alia, late fees, returned check fees, repair costs, hold over rent charges, and unpaid rent. However, the Lease stated that the eight percent interest computation was a method for determining the "worth at the time of the award" of damages that included (1) unpaid rent earned at the time of the Lease's termination; or (2) the amount of unpaid rent that would have been earned after the Lease's termination until the time of the award exceeds the net amount of rent that could have been reasonably obtained by MWP using reasonable diligence to relet the premises. Thus, the Lease did not permit MWP to recover interest based on items unrelated to unpaid rent such as repair costs and returned check fees.

[16] See *Caswell*, 241 Ga. App. at 703.

15

Paragraph 19 of the Lease stated that at the termination of the Lease the tenant shall "deliver immediate possession of the Premises to Landlord." The Lease also states that

> [i]f Landlord agrees in writing that Tenant may hold over after the expiration or termination of this Lease, unless the parties hereto otherwise agree in writing on the terms of such holding over, . . . all of the other terms and provisions of this Lease shall be applicable during that period, except that Tenant shall pay Landlord from time to time, upon demand, as rent for the period of any such hold over, an amount equal to two hundred percent (200%) of the rent in effect on the termination date.

MWP alleged that Southern Star failed to vacate the premises by the end of the Lease term and did not return keys to the premises until approximately September 11, 2021. However, Southern Star offered contrasting affidavit testimony that it "removed all of the property in the Premises from the Premises a week before the Lease expired on August 31, 2019[.]" Southern Star also asserted that keys to the premises were offered to a representative of MWP after the property had been removed, and that the MWP representative "refused to take the keys." Southern Star further presented invoices showing that it rented a moving truck from August 23 to August 25, which Southern Star claims was used to move its property from the premises.

16

"When viewed in the light most favorable to [Southern Star] as the nonmoving party, the conflicting affidavits and other evidence . . . raise a question of fact for the jury as to whether [Southern Star should have been assessed holdover rent.]"[17] Thus, because there is an issue of material fact concerning MWP's claim for holdover rent, we reverse the trial court's grant of summary judgment.

2. Southern Star argues that the trial court erred in granting summary judgment for MWP on the counterclaim. Specifically, Southern Star claims that MWP should not have been allowed to use Southern Star's security deposit to offset amounts owed in previously abated rent because this put MWP in a better position than it would have been in had Southern Star not defaulted.

This argument is without merit. Using Southern Star's security deposit to collect previously abated rent did not constitute a windfall for MWP. Rather, such action simply returned MWP to its original position before it agreed to abate the first two month's rent.[18] The language of the abatement letter stated that MWP would

---

[17] *Netsoft Assoc. v. Flairsoft, Ltd.*, 331 Ga. App. 360, 363 (771 SE2d 65) (2015) (punctuation omitted).

[18] Cf. *Rafferzeder v. Zellner*, 272 Ga. App. 728, 731 (2) (613 SE2d 229) (2005) (holding that the trial court erred by failing to reduce homeowners' award by the amount saved in not paying contractor the full contract price because such a result constituted a windfall to the homeowner).

17

abate rent for the first two months of the Lease's term by 50 percent, but the rent would be immediately due and payable "[i]n the event Tenant defaults in its obligations under the Lease." Such language established a condition subsequent, which Southern Star violated when it defaulted.[19]

Moreover, the case cited by Southern Star, *Gainesville Glass Co. v. Don Hammond, Inc.*,[20] is distinguishable from the present matter. In *Gainesville Glass Co.*, the appellant refused to install windows for the appellee at the previously agreed-upon price.[21] The appellee then secured another contractor to install the windows at a cost greater than what the appellant had agreed to charge.[22] The jury awarded the appellee the difference between what the appellant agreed to charge and the ultimate cost the appellee paid for the work.[23] We held that the award of damages was in error

---

[19] See *Sheridan v. Crown Capital Corp.*, 251 Ga. App. 314, 318 (2) (554 SE2d 296) (2001) ("A condition subsequent to an enforceable contract is a term of the contract within the intent of the parties that the happening or nonoccurrence of an event after the contract becomes binding upon the parties, which, by pre-agreement of the parties, causes the contract to terminate without further duties and obligations on any party.").

[20] 157 Ga. App. 640 (278 SE2d 182) (1981).

[21] Id.

[22] Id.

[23] Id.

as the appellee was only entitled "to be placed in the position it would have been had appellant performed its part of the contract[,]" and there was no evidence the more expensive materials used by the second contractor were necessary.[24] Here, in contrast, MWP was not placed "in a better position than [it] would have been in if the contract had not been breached."[25] Rather, MWP was returned to its original position had no abatement letter existed, namely it collected the original amount of base rent owed.[26]

Thus, for the above-stated reasons, the trial court did not err in granting MWP summary judgment on Southern Star's counterclaim.

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Senior Appellate Judge Herbert E. Phipps concur*.

---

[24] Id. at 643-644 (1).

[25] Id. at 644 (1) (citation and punctuation omitted).

[26] See *Manning & Assoc. Personnel v. Trizec Properties*, 212 Ga. App. 600, 601 (1) (442 SE2d 783) (1994) (affirming trial court's grant of summary judgment enforcing a lease provision allowing for recoupment of previously "excused" rent in the event of tenant's default).