S11A1912. ALLEN et al. v. SEA GARDENS SEAFOOD, INC.

(723 SE2d 669)

HUNSTEIN, Chief Justice.

Appellants James Allen and John Littlefield appeal from the trial court's entry of a consent judgment purporting to resolve their

ongoing dispute with Appellee Sea Gardens Seafood, Inc. over title to waterfront property in McIntosh County. Because both parties did not in fact consent to all terms of the consent judgment, the trial court erred in issuing it, and we therefore vacate and remand for further proceedings in the trial court.

In 2007, Sea Gardens petitioned under OCGA § 23-3-60 to quiet title to the property in question, naming Appellants, who own adjoining property, as the only potential adverse claimants. Thereafter, Sea Gardens filed a declaratory judgment action against Appellants seeking a determination as to ownership of a dock adjacent to the property. After over four years of litigation, during a pretrial conference, the parties reached a settlement, which was memorialized in a handwritten "outline," signed by the parties and their attorneys, and presented in open court to the trial judge as the basis on which a formal consent judgment would be prepared and ultimately signed by the parties and entered by the court.

Under the settlement as outlined, the parties agreed on the location of the property line dividing Sea Gardens' and Appellants' respective parcels and apportioned the dock. As consideration, Appellants agreed to pay Sea Gardens "the sum of $50,000 within 60 days of this agreement." The final paragraph of the handwritten outline provides that "[t]his agreement is conditioned upon the parties obtaining any necessary permits or authorizations." This provision was explained to the trial court by Sea Gardens' counsel as follows: "the agreement is conditioned on the parties obtaining any necessary permits or authorizations such as [Department of Natural Resources] permits or otherwise that may be requested."

In the draft of the consent judgment that was subsequently prepared by Sea Gardens' counsel,[1] the language on this final point reads as follows: "Any action of a party which is allowed by this agreement and which requires governmental permits or authorizations is conditioned upon that party obtaining said permit or authorization." Appellants balked at this language, contending that Sea Gardens had transformed the provision from one establishing a condition precedent to the agreement itself, to one merely setting forth a term of the agreement requiring governmental approval for actions taken under the agreement where applicable law so requires.[2] Ultimately, the parties could not come to terms on the

---

[1] Sea Gardens' counsel actually prepared two drafts of the consent judgment, the differences between which are not relevant to our resolution of this appeal. We therefore refer to both drafts together as simply "the draft."

[2] This distinction makes a genuine difference for Appellants. Assuming the property line is drawn as contemplated under the settlement, the septic system servicing an existing structure on Appellants' side of the line would drain into septic fields located on Sea Gardens'

language of the consent judgment and thus turned to the trial court, filing cross-motions to compel enforcement of their respective understandings of the settlement agreement. After a hearing at which both parties presented evidence in support of their respective understandings, the trial court adopted the construction favored by Sea Gardens and signed the draft of the consent judgment prepared by Sea Gardens' counsel. Sea Gardens' counsel signed the document in acknowledgment that he had drafted it, but neither Appellants nor their counsel have ever signed it.

1. A "consent judgment" is "[a] judgment, the provisions and terms of which are settled and agreed to by the parties to the action." Black's Law Dictionary 756 (5th ed. 1979). Thus, by definition, a consent judgment is valid only where the parties agree to it. Accordingly, the trial court erred by purporting to enter a consent judgment where the parties clearly did not agree to all its terms. See *Leventhal v. Cumberland Dev., LLC*, 267 Ga. App. 886 (1) (600 SE2d 616) (2004) (vacating and remanding where purported consent order was not agreed to by parties).

2. In addition, to the extent we were to construe the so-called consent judgment as, in substance, an order enforcing the parties' settlement agreement, we would still be unable to affirm it. We review a trial court's order on a motion to enforce a settlement agreement de novo. *Triple Eagle Assocs., Inc. v. PBK, Inc.*, 307 Ga. App. 17 (704 SE2d 189) (2010). The handwritten settlement agreement clearly states that "*[t]his agreement* is *conditioned upon* the parties obtaining any necessary permits or authorizations." (Emphasis supplied.) It does not state, as the consent judgment does, that only acts contemplated within the agreement are conditioned on the obtaining of permits. Though conditions precedent are not favored in the construction of contracts, where the language of the contract clearly creates such a condition, that condition must be enforced. *General Steel, Inc. v. Delta Bldg. Systems, Inc.*, 297 Ga. App. 136 (1) (676 SE2d 451) (2009). The language of the provision at issue here could scarcely be more explicit that the "agreement" itself is "conditioned upon" the procuring of necessary permits.

Sea Gardens contends, however, that, viewing the settlement agreement as a whole, its construction of the permit provision, as reflected in the consent judgment, is the most reasonable construc-

---

side of the line. Relocating these septic fields, so as to continue using the existing septic system, will require government approval. Under Appellants' proffered understanding of the settlement's permit provision, their inability to obtain necessary permits to relocate the septic fields would vitiate the agreement itself, whereas under Sea Gardens' interpretation, the agreement would stand but Appellants would simply be unable to relocate the septic fields and therefore be unable to utilize the existing septic system.

tion. Specifically, Sea Gardens points to the payment provision, referenced above, which requires payment of the contract price "within 60 days of this agreement." Sea Gardens argues that if the permit provision had been intended as a true condition precedent to the agreement, then the parties would have fixed the deadline for payment relative to the obtaining of permits, rather than relative to the making of the agreement.

As Sea Gardens suggests, we are required under our rules of contract interpretation to attempt to give meaning to all provisions of the contract and look to "the whole contract . . . in arriving at the construction of any part." OCGA § 13-2-2 (4). See *Horwitz v. Weil*, 275 Ga. 467, 468 (569 SE2d 515) (2002). However, we conclude that we are capable of complying with this tenet of contract construction while still interpreting the permit provision in accordance with its plain language. We construe the agreement as requiring Appellants to make the required payment within 60 days of the parties' execution of the agreement but also requiring the return of this payment should the permit contingency fail and the agreement thus be rendered void. This construction both upholds the plain language of the agreement and, given the "attendant and surrounding circumstances," see OCGA § 13-2-2 (1), comports with common sense. Appellants would not rationally have agreed to pay $50,000 and settle the property boundaries as they did without a guarantee that they would not be bound to these terms in the event they were unable to obtain the permits necessary to continue lawfully utilizing their septic system. Further, to the extent Sea Gardens claims to have ascribed to the agreement this irrational meaning, "there is no evidence that [Appellants] were aware of th[is] meaning," and we cannot give effect to such " 'secret intent.' " (Citation omitted.) *Greenwald v. Kersh*, 275 Ga. App. 724, 727 (621 SE2d 465) (2005).

In sum, in entering the consent judgment, the trial court, rather than enforcing the parties' settlement agreement as written, impermissibly modified the permit provision by eliminating its function as a condition precedent to the agreement. See *Arrow Exterminators, Inc. v. Gates Condo. Homeowners Assn.*, 294 Ga. App. 620, 622 (1) (669 SE2d 421) (2008) (" '[i]t is the duty of courts to construe and enforce contracts as made, and not to make them for the parties' ") (citation omitted). Accordingly, for this reason as well as that set forth in Division 1, supra, the consent judgment must be vacated. We leave it to the trial court to determine on remand whether the parties' handwritten agreement is sufficiently definite, certain, and unambiguous as to all material terms to be itself enforced as the parties' final settlement. See *Herndon v. Herndon*, 227 Ga. 781, 784 (183 SE2d 386) (1971) (where parties enter into a "definite, certain and unambiguous" settlement agreement, "it is the duty of the court

to make the agreement the judgment of the court and thereby terminate the litigation"); *Triple Eagle Assocs., Inc. v. PBK, Inc.*, supra, 307 Ga. App. at 19-20 (in order for settlement agreement to be enforceable, "the parties must agree on all material terms, and those terms cannot be incomplete, vague, uncertain or indefinite") (footnote omitted).

*Judgment vacated and case remanded. All the Justices concur.*

DECIDED MARCH 19, 2012.

*Page Perry, Craig T. Jones, Robert B. Jackson IV*, for appellants.
*Adam S. Poppell III, James A. Chamberlin, Jr.*, for appellee.