**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 10, 2013**

# In the Court of Appeals of Georgia

A13A0901; A13A0902. DEWRELL SACKS, LLC et al. v. CHICAGO TITLE INSURANCE; and vice versa.

MILLER, Judge.

Chicago Title Insurance Company ("CTIC") sued Dewrell Sacks, LLP ("DS") and Mara Sacks Dewrell[1] (collectively "defendants") seeking to recover losses that CTIC suffered as a result of DS's errors with regard to several real estate closings in Georgia. CTIC raised claims for indemnity and breach of the parties' title insurance agency contracts and Mara Dewrell's guaranty agreement, and sought to recover monies owed by DS for the remittance of title insurance policy premiums that DS collected. The defendants denied liability for CTIC's claims, and raised the defense of res judicata based upon prior litigation in federal court. The defendants also raised

---

[1] CTIC also sued Tracey Dewrell, however, he was dismissed from the case without prejudice by consent order.

several counterclaims including breach of contract, refusal to settle accounts, breach of fiduciary duty, negligence, setoff and recoupment, punitive damages and attorney fees. Following discovery, both parties filed cross-motions for summary judgment. The trial court denied the defendants' motion for summary judgment on res judicata grounds, finding that this case and the prior federal lawsuit did not arise out of the same transaction or series of transaction. The trial court granted CTIC's motion for partial summary judgment on the defendants' counterclaims. The trial court also granted Mara Dewrell's motion for summary judgment on her claim that the parties' rescinded her personal guaranty.

The instant cross-appeals ensued. In Case No. A13A0901, the defendants contend that (1) the trial court erred in denying their motion for summary judgment on the grounds of illegality of the parties' contract and res judicata, and (2) the trial court erred in dismissing their counterclaims, In Case No. A13A0902, CTIC contends that the trial court erred in granting summary judgment to the defendants on the issue of whether Mara Dewrell's guaranty had been rescinded. For the reasons that follow, we affirm in part and reverse in part.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

2

> A de novo standard of review applies to an appeal from a [grant or] denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations and footnote omitted.) *GEICO Gen. Ins. Co. v. Wright*, 299 Ga. App. 280, 281 (682 SE2d 369) (2009).

So viewed, the evidence shows that CTIC and DS had a multi-state agency relationship under which DS was allowed to issue title insurance policies in association with real estate closings in Georgia, Tennessee and Florida. In November 2002, CTIC and DS entered into an Issuing Agency Contract ("Agency Contract") authorizing DS to issue title insurance policies on CTIC's behalf in Georgia. The Agency Contract included a schedule of rates and remittances, providing that DS was required to remit to CTIC 30 percent of the premiums charged for title policies DS issued. The Agency Contract also included a contemporaneous personal guaranty signed by Mara Dewrell in which she agreed to fully indemnify CTIC for any and all loss it sustained as a result of DS's failure to perform its duties and obligations under the Agency Contract.

In June 2003, CTIC and DS amended the schedule of rates and remittances to provide that DS was required to remit 25 percent of the gross title premiums it

3

collected, and to provide for a minimum net remittance of $60,000 per calendar year to CTIC. The amendment further provided that the lower 25-percent remittance rate was conditioned upon a policy claims to remittance ratio of 20 percent or less. The parties amended the rate schedule again in February 2004, to provide for a minimum remittance of $75,000 in net premiums per year, and a five percent rebate of gross premiums if DS remitted $100,000 in net premiums per calendar year. The rebate was conditioned upon a yearly claims to remittance ratio of 20 percent or less.

The parties terminated the Agency Contract on August 22, 2005. The termination agreement specifically provided that the obligations required under the terms of the Agency Contract, including payments, liability for claims and provisions for notification of claims would continue and be governed by the Agency Contract.

Case No. A13A0901

1. DS contends that the trial court erred in denying its motion for summary judgment on the grounds of illegality of the Agency Contract and res judicata, We disagree.

a. Illegality of Contract

DS argues that the Agency Contract is illegal and unenforceable, because the rebate provision which the parties added to the Agency Contract by amendment in

4

February 2004 violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607. In support of its argument, DS relies on a series of consent orders and stipulations entered into between CTIC and various regulatory agencies wherein CTIC agreed to comply with RESPA and pay a $5 million civil money penalty.

RESPA prohibits kickbacks and unearned fees in connection with transactions involving federally-related mortgage loans. See 12 USC § 2607. RESPA does not, however, prohibit payments by a title company to its duly appointed agent for services actually performed in the issuance of a policy of title insurance. See 12 USC § 2607 (c); 24 CFR § 3500.14 (g) (ii). Moreover, we need not decide whether the rebate provision in some way violated RESPA, because that provision was clearly severable and, therefore, did not render the entire Agency Contract void and unenforceable. See OCGA § § 13-8-1 (providing that where the part of a contract which is legal will not be invalidated by the part of the contract which is illegal, if the contract is severable); OCGA § § 13-3-45 (regarding partially void consideration and severability of contracts).

b. Res Judicata

DS argues that the doctrine of res judicata bars CTIC's claims in this action because CTIC could have asserted these claims in its prior suit against DS in the

United States District Court for the Middle District of Tennessee. Specifically, DS argues that the prior suit involved the same cause of action at issue in this case.

"In determining the claim-preclusive effect of the previous judgment, we apply the law that would be applied by state courts in the State in which the first federal diversity court sits. Accordingly, we apply [Tennessee] law in deciding this issue." (Citations and punctuation omitted.) *BKJB Partnership v. Moseman*, 284 Ga. App. 862, 864-865 (1) (644 SE2d 874) (2007).

In Tennessee, "[t]he doctrine of res judicata, also referred to as claim preclusion, bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." (Citation and punctuation omitted.) *Creech v. Addington*, 281 SW3d 363, 376 (II) (Tenn.2009). Tennessee Courts apply the transactional test set forth in Restatement (Second) of Judgments for determining whether two proceedings constitute the same cause of action. See *Hooker v. Haslam*, 393 SW3d 156, 165 (IV) (Tenn. 2012). Under the transactional test, two suits "shall be deemed the same cause of action for purposes of res judicata where they arise out of the same transaction or a series of connected transactions." (Punctuation omitted.) *Creech*, supra, 281 SW3d at 381 (II) (C).

6

Contrary to DS's contention, CITC's prior Tennessee suit against DS did not involve the same cause of action. The prior suit involved alleged errors and omissions under the parties' Tennessee title insurance agency contract, arising from real estate closing transactions that occurred in Tennessee. See *Chicago Title Ins. Co. v. Dewrell Sacks, LLP*, 2009 U.S. Dist. LEXIS 109757, *2-3 (M.D. Tenn. 2009).[2] CTIC's suit in this case involves alleged errors and omissions under the parties' Georgia Agency Contract, arising from real estate closing transactions that occurred in Georgia. Thus, CTIC's claims in this case do not arise out of the same transaction or series of transactions at issue in the Tennessee action. Accordingly, the trial court properly denied DS's motion for summary judgment on res judicata grounds.

2. DS contends that the trial court erred in granting partial summary judgment to CTIC on DS's counterclaims. We discern no error.

a. Breach of Contract

DS counterclaimed for breach of contract based on CTIC's failure to pay annual rebates on gross premiums collected by DS. On appeal, DS argues that the trial

---

[2] The District Court subsequently granted DS's motion for reconsideration in part, holding that DS was not properly served in that case. See *Chicago Title Ins. Co. v. Dewrell Sacks, LLP*, 2009 U.S. Dist. LEXIS 121786, *18 (M.D. Tenn. 2009). The case was ultimately dismissed with prejudice.

7

court erred in finding that CTIC was entitled to judgment as a matter of law on DS's breach of contract counterclaim because DS failed to meet the conditions precedent to its entitlement to a rebate under the Agency Contract. Specifically, DS argues that a material issue of fact remains regarding the percentage of gross premiums that DS was required to remit to CTIC.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." (Citation, punctuation and emphasis omitted.) *Canton Plaza v. Regions Bank*, 315 Ga. App. 303, 306 (1) (732 SE2d 449) (2012). The Agency Agreement as amended in 2004 pertinently provides:

### REMITTANCES

For each commitment, policy and endorsement of [CTIC], the order for which was initiated by [DS] and which is issued by [DS] pursuant to this contract, [DS] shall report and remit twenty-five (25%) percent of collected gross title premiums with a minimum net remittance to [CTIC] of $75,000.00 Dollars each calendar year. If [DS] remits $100,000.00 in net premiums in a calendar year, and [DS's] claims to remittance ratio does not exceed twenty (20%) percent in any calendar year, then [DS] shall receive a rebate of five (5%) percent of reported gross premiums payable by January 31st the following year.

"Where [, as here,] the language of a contract is plain and unambiguous, . . . no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance." (Citations and punctuation omitted.) *Richard Bowers & Co. v. Creel*, 280 Ga. App. 199, 200-201 (1) (633 SE2d 555) (2006); see also *Canton Plaza*, supra, 315 Ga. App. at 308-309 (3) (the contract alone is looked to where the language is clear and unambiguous). Although conditions precedent are not favored in interpreting contracts, "we are required under our rules of contract interpretation to attempt to give meaning to all provisions of the contract and look to the whole contract in arriving at the construction of any part." (Citations and punctuation omitted.) *Allen v. Sea Gardens Seafood*, 290 Ga. 715, 717-718 (2) (723 SE2d 669) (2012); see also OCGA § § 13-2-2. Consequently, where the language of the contract clearly creates such a condition, that condition must be enforced.

Here, the Agency Contract as amended in 2004 clearly and unambiguously required DS to remit 25 percent of the gross title premiums it collected as a condition precedent to the rebate provision. This construction both upholds the plain language of the agreement, and comports with common sense. See *Allen*, supra, at 718 (2).

Although the undisputed evidence shows that DS remitted only 22.95 percent of the gross title premiums it collected in 2004 and 2005, DS contends that, as of mid-

9

2005, it was required to remit only 20 percent of the gross premiums it collected. DS relies on a June 2005 purported amendment to the Agency Contract. DS's reliance is misplaced because the purported amendment was not signed by CTIC, and the amendment contained no language providing that DS was entitled to a rebate in exchange for remittance of only 20 percent of the gross premiums.[3] Accordingly, the evidence shows that DS's entitlement to any rebates could only have been based on the 2004 amendment. Since the 2004 amendment required DS to remit 25 percent of the gross premiums as a condition precedent to any rebates, and the undisputed evidence showed that DS remitted only 22.9 percent of the gross premiums it collected, CTIC was entitled to judgment as a matter of law on DS's counterclaim for breach of contract.

_____

[3] The purported 2005 amendment provided only:

> For each commitment, policy and endorsement of [CTIC], the order for which was initiated by [DS] and which is issued by [DS] pursuant to this contract, [DS] shall report and remit twenty (20%) percent of collected gross title premiums.

The purported amendment also omitted the language from the prior amendments to the Schedule of Rates and Remittances, requiring a minimum net remittance of gross premiums to CTIC, and the amendment contained no reference to a rebate provision.

10

b. Complaint on Account and Money Had and Received

DS contends that the trial court erred in dismissing its counterclaims for money CTIC owed DS on account, and for money had and received. Contrary to DS's contention, the four-year statute of limitation set forth in OCGA § § 9-3-25 applied to its counterclaims for complaint on Account and Money Had and Received. See *Gamlins v. A. E. Roberts & Assoc.*, 254 Ga. App. 763, 765 (2) (b) (564 SE2d 29) (2002) (statute of limitation for suit on account is four years); *Macomber v. First Union Nat. Bank*, 212 Ga. App. 57, 58 (1) (441 SE2d 276) (1994) (statute of limitation is action for money had and received is four years).

The record shows that the parties terminated the Agency Contract on August 22, 2005, and no evidence in the record shows that DS made any payments to CTIC for title insurance policy premiums after September 2005.[4] Accordingly, the record shows that DS's right of action on its counterclaims accrued and the four year statute of limitation began to run no later than the last payment that DS made to CTIC in September 2005. See *Gamlins*, supra, 254 Ga. App. at 765 (2) (b) (statute of

---

[4] Contrary to DS's contention, the December 2009 monthly statements from CTIC do not show that DS made any payments to CTIC after September 2005. Even assuming that either of these statements applies to DS's account under the Agency Contract, the statements, at best, show an old account balance that CTIC was carrying forward.

11

limitation began running on date that plaintiff's right of action accrued); *Macomber*, supra, 212 Ga. App. at 59 (2) (statute of limitation begins to run on cause of action on date that suit on claim can first be successfully maintained). Since DS did not bring its counterclaims for complaint on account and money had and received until February 8, 2010, more than four years after they accrued, these claims were brought outside the statute of limitation and the trial court properly granted summary judgment to CTIC on these claims.

c. Recoupment

We reach a different conclusion with regard to DS's counterclaim for recoupment.[5] Under Georgia law, "[a] recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages because the plaintiff has not complied with the cross-obligations or independent covenants arising under the contract being sued upon." (Footnotes omitted.) *Automated Print*, supra, 288 Ga. App. at 330 (2). Since DS's counterclaim for recoupment arose from CTIC's alleged breach of its obligations under the Agency Contract, it is subject to the six-year

---

[5] DS titled this claim as a counterclaim for "Set-off and Recoupment." DS does not, however, seek to setoff an independent debt owed to it by CTIC. Accordingly, this claim sets forth only a cognizable action for recoupment. See *Automated Print v. Edgar*, 288 Ga. App. 326, 330 (2) (654 SE2d 413) ( 2007).

12

statute of limitation set forth in OCGA § § 9-3-24. Accordingly, the trial court erred in applying OCGA § § 9-3-25's four-year statute of limitation, and we reverse the grant of summary judgment as to this counterclaim.

d. In Court V of its counterclaim, DS also asserted claims for Breach of Fiduciary Duty, Breach of Duty to Avoid Self-Dealing, Breach of the Duty of Good Faith and Fair Dealing, Negligence, Negligent Misrepresentation, Unfair and Deceptive Practices, Violation of the Georgia Fair Business Practices Act ("GFBPA") and Breach of Contract. DS contends that the trial court erred in granting summary judgment to CTIC on all of the claims its brought under Court V, even though CTIC only sought dismissal on DS's purported claims under GFBPA and RESPA.[6] We agree.

A motion for summary judgment is a vehicle for disposing of a controversy without the necessity of a trial. It is, as the description shows, a summary disposition of the issues in order to efficiently resolve litigation. Nevertheless, due process requires that the respondent not be surprised; rather, that he be given reasonable opportunity to refute the movant's showing that there are no genuine issues of material fact. Therefore, the procedure is designed to give the opposing party fair

---

[6] DS affirmed in its response to CTIC's motion for partial summary judgment that it was not asserting a RESPA claim, and DS does not challenge the grant of summary judgment to CTIC on its GFBPA counterclaim.

13

opportunity to contradict the supporting material relied upon by the movant.

*Porter v. Coatings v. Stein Steel & Supply Co.*, 247 Ga. 631 (278 SE2d 377) (1981); see also *Ferdinand v. City of East Point*, 288 Ga. App. 152, 160 (2) (653 SE2d 529) (2007). Here, CTIC moved for summary judgment as to DS's counterclaims for RESPA and GFBPA violations. The trial court found that DS could not maintain a claim under GFBPA because it failed to show that the Agency Contract is a consumer transaction. The trial court also found that the remaining claims asserted under Count V of DS's counterclaim were asserted outside the two-year statute of limitation.

Although CTIC did not move for summary judgment on the remaining claims asserted under Count V of DS's counterclaim, CTIC argues that this Court should sustain the trial court's ruling regarding the remaining claims under the right for any reason rule. That rule does not apply, however, where as here the movant failed to raise the issue in the trial court and the nonmovant did not have a fair opportunity to respond. See *Georgia-Pacific, LLC v. Fields*, __ Ga. __, 2013 Ga. LEXIS 634, *11 (2013). Based on the record and the hearing transcript, DS did not have a full and fair opportunity to refute the trial court's findings that its remaining counterclaims under Count V were barred by the applicable statutes of limitation. Consequently, we

14

reverse that portion of the trial court's order that dismissed Count V of DS's counterclaim in its entirely, and remand the case for further proceedings consistent with this opinion.

Case No. A13A0902

4. In its cross-appeal, CTIC contends that the trial court erred in granting summary judgment to Mara Dewrell on the issue of whether her guaranty was rescinded. We agree.

Here, in support of her motion for summary judgment, Mara Dewrell filed a contemporaneous affidavit stating that the parties rescinded her guaranty. Mara Dewrell's affidavit included a copy of the amendment rescinding the guaranty, which was signed by both DS and CTIC's Executive Vice President, Erika Meinhardt. CTIC submitted a responsive affidavit stating that it ultimately declined DS's request to rescind the guaranty. The affidavit also stated that CTIC did not provide DS with the signed copy of the amendment until DS requested, during discovery in this case, that CTIC provide copies of all relevant documents in its files. . When viewed in the light most favorable to CTIC as the nonmoving party, the evidence raised a question of fact for the jury regarding whether CTIC intended to rescind the guaranty. Accordingly,

15

we reverse the grant of summary judgment to Mara Dewrell on the issue of whether the parties rescinded her guaranty.

In sum, we affirm the trial court's denial of DS's motion for summary judgment on the grounds of illegality of the Agency Contract and res judicata. We affirm the grant of partial summary judgment to CTIC on DS's counterclaims for breach of contract, complaint on account, and money had and received. We reverse the grant of summary judgment to CTIC on DS's recoupment counterclaim, and its claims under Count V of its counterclaim other than its claim for GFBPA violations. We also reverse the grant of summary judgment to Mara Dewrell of her claim that the parties rescinded her guaranty.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Ray, J., concur.*

16