**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 13, 2017**

# In the Court of Appeals of Georgia

A17A0869. SAWS AT SEVEN HILLS, LLC et al. v. FORESTAR REALTY, INC. et al.

A17A0870. FORESTAR REALTY INC. et al. v. SAWS AT SEVEN HILLS, LLC et al.

A17A0871. BERKSHIRE HATHAWAY HOME SERVICES, GEORGIA v. SAWS AT SEVEN HILLS, LLC et al.

RICKMAN, Judge.

Approximately four and a half years after acquiring property in Seven Hills, a planned community, SAWS at Seven Hills, LLC, NatureWalk Development Company, Inc., and Artisan Built Communities, LLC (collectively "SAWS"), filed suit against the Seven Hills Homeowners Association, Inc. (the "HOA"), Forestar Realty Inc. (the declarant of the HOA), and Fieldstone Realty Partners d/b/a Fieldstone Association Management (the management company for the HOA) (collectively "Forestar"), to resolve disputes over, inter alia, HOA assessments,

maintenance of common areas within the community, and alleged false information provided by Forestar to prospective home buyers regarding SAWS's properties. SAWS also filed suit against Berkshire Hathaway Home Services Georgia ("BHHS"), a real estate brokerage firm with a sales office located inside the Seven Hills clubhouse, alleging that its sales agents provided false information to prospective home buyers regarding SAWS properties. SAWS sought a declaratory judgment and alleged breach of covenants by Forestar, and further alleged tortious interference with business relations by Forestar and BHHS.

Forestar and BHHS filed motions for summary judgment. The trial court granted Forestar's motion in part and denied it in part as to the declaratory judgment and breach of covenant claims, and denied summary judgment to Forestar and BHHS on SAWS's claims of tortious interference with business relations.

For the following reasons, we vacate the trial court's ruling on SAWS's claims for declaratory judgment and breach of covenant and remand for proceedings consistent with this opinion. We reverse the trial court's denial of summary judgment to Forestar and BHHS on SAWS's tortious inference with business relations claim.

To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the

2

evidence and all reasonable inferences and conclusions drawn therefrom, viewed in the nonmovant's favor, warrant judgment as a matter of law. We review de novo the trial court's ruling on a motion for summary judgment.

(Citation and punctuation omitted.) *Hart v. Sirmans*, 336 Ga. App. 212 (784 SE2d 67) (2016).

So viewed, the record shows that Seven Hills is a planned community that encompasses over 2700 acres of land. The original developer of Seven Hills was TEMCO Associates, LLC ("TEMCO"). TEMCO created the Seven Hills HOA and, in 2003, recorded the "Declaration of Covenants, Conditions, and Restrictions for Seven Hills" (the "Declaration"). TEMCO was the Declarant under the Declaration.

At some point, TEMCO sold approximately 855 acres of Seven Hills ("the Property") to Patrick Malloy Communities, LLC, which later sold the Property to Levitt and Sons of Paulding County, LLC ("Levitt"). Levitt started to develop the Property and subsequently recorded 44 platted lots with the HOA.

Later, Levitt filed for bankruptcy. Thereafter, SAWS acquired the Property through a bankruptcy sale. During the pendency of the bankruptcy sale, Levitt recorded another plat which recombined the Property into one unit. The bankruptcy court approved the sale.

3

At some point after SAWS acquired the Property, TEMCO transferred its ownership rights in the remaining acreage of Seven Hills to Forestar. TEMCO also assigned to Forestar its rights as declarant under the Declaration. In 2014, Forestar recorded an Amended Declaration and a Supplementary Declaration. SAWS disputes the enforceability of the Amended and Supplementary Declarations.

SAWS sought a declaratory judgment as to two separate issues involving the interpretation of language contained in the Declaration related to HOA assessments and maintenance of common areas. As to HOA assessments, SAWS argued that the Declaration is ambiguous as to the triggering point for the payment of assessments after a plat is recorded and sought clarification as to when assessments shall be calculated with respect to each subsequently platted unit. SAWS further argued that it was entitled to a declaration that the Property should have been treated as one unit until mid-2013 when it recorded its first plat. Regarding maintenance of common areas, SAWS argued that it was entitled to a declaration that Forestar is required to maintain common areas owned by SAWS. SAWS's breach of covenant claims center around the same issues, namely that Forestar breached the Declaration by charging SAWS for assessments not owed. SAWS further alleged that Forestar failed to maintain common areas in accordance with the terms of the Declaration.

4

Additionally, SAWS argued that agents of Forestar and BHHS gave potential home buyers false information about SAWS's properties in order to steer buyers away from purchasing homes from SAWS. SAWS alleged that as a result of Forestar and BHHS's actions, SAWS suffered damages due to lost sales.

The trial court granted in part and denied in part summary judgment to Forestar on SAWS's claims for declaratory judgment and breach of covenant, and denied summary judgment to both Forestar and BHHS on SAWS's claim for tortious interference with business relations. For the following reasons, we vacate the trial court's ruling on SAWS's claims for declaratory judgment and breach of covenant and remand this case for proceedings consistent with this opinion. We reverse the trial court's denial of summary judgment on the tortious inference with business relations claim as to both Forestar and BHHS.

*Case No. A17A0869*

1. SAWS contends that the trial court erred by granting summary judgment in part to Forestar on its claims for declaratory judgment and breach of covenant regarding HOA assessments. Specifically, SAWS argues that the Declaration is ambiguous as to when the obligation to pay HOA assessments commences and contends that the trial court failed to engage in a contract construction analysis and/or

5

misinterpreted the contract language as to when its obligation to pay assessments began. We agree.

The Declaration provides that, "[t]he obligation to pay assessments shall commence as to each Unit on the earlier of (a) the closing of the conveyance of the Unit to a Class "A" Member other than a Builder; or (b) 15 months following the conveyance of the Unit from [Forestar] or any Affiliate of [Forestar] to a Builder . . ."[1] The Declaration defines a "Unit" as,

> [a] portion of Seven Hills, whether improved or unimproved, which may be independently owned and is intended for development, use and occupancy as an attached or detached residence for a single family. The term shall refer to the land, if any, which is part of the Unit as well as any improvements thereon. The boundaries of each Unit shall be delineated on a recorded plat.
>
> Prior to recording a subdivision plat delineating Units within a parcel, such parcel shall be deemed to be a single Unit. Thereafter, the portion encompassed on such plat shall contain the number of Units determined

[1] A builder is defined in the Declaration as, "[a]ny person who purchases one or more Units for the purpose of constructing homes for later sale to consumers, or who purchases land within Seven Hills for further subdivision, development, and/or resale in the ordinary course of its business." Neither party contests that SAWS falls within the definition of a builder.

6

as set forth in the preceding paragraph. Any portion not encompassed on such plat continue to be treated as a single unit.

SAWS argues that while the Declaration is clear as to when a Builder pays assessments for the Unit(s) that it acquires at the time of the conveyance of the property from Forestar or its affiliate (i. e. 15 months from the conveyance), it is ambiguous as to when the obligation to pay assessments commences as to each newly platted Unit the Builder subsequently records after the initial conveyance of the property.

> [U]nder the Declaratory Judgment Act, a superior court may enter declaratory judgment in cases of actual controversy, and to determine and settle by declaration any justiciable controversy of a civil nature when it appears that the ends of justice require that such should be made for the guidance and protection of the petitioner, and when such a declaration will relieve the petitioner from uncertainty and insecurity with respect to his rights, status, and legal relations. But a declaratory judgment may not be merely advisory in nature. Thus, when a party seeking declaratory judgment does not show it is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is proper.

(Punctuation and footnotes omitted.) *Pinnacle Benning, LLC v. Clark Realty Capital, LLC*, 314 Ga. App. 609, 612-613 (1) (724 SE2d 894) (2012). See OCGA § 9-4-1 et seq.

"[T]he declaration of a homeowner's association is considered a contract[.]" (Punctuation and footnote omitted.) *Marino v. Clary Lakes Homeowners Assn.,* 331 Ga. App. 204, 208 (1) (770 SE2d 289) (2015). "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." (Citation and punctuation omitted.) *Dewrell Sacks, LLP v. Chicago Title Ins. Co.*, 324 Ga. App. 219, 223 (2) (a) (749 SE2d 802) (2013). "The construction of a contract is peculiarly well suited for disposition by summary judgment because, in the absence of an ambiguity in terms, it is a question of law for the court." (Footnote omitted). *Tucker Materials (GA), Inc. v. Devito Contracting & Supply, Inc.*, 245 Ga. App. 309, 310 (535 SE2d 858) (2000).

In its summary judgment order, the trial court found that SAWS's claim for a declaratory judgment related to assessments made prior to mid-2013 was improper because declaratory relief is limited to future, not past actions. We agree. See *Richardson v. Phillips*, 302 Ga. App. 305, 309 (1) (690 SE2d 918) (2010) ("[A] declaratory judgment will not be entertained where the rights of the parties have

accrued and the plaintiff faces no risk of taking future undirected action.") (citations and punctuation omitted.).

As to future assessments, the trial court found that issue to be appropriate for declaratory relief. But while the trial court summarily concluded that fees were properly assessed against SAWS, it did so without addressing the threshold question as to whether the language of the Declaration governing the assessment of those fees was ambiguous and when, under the terms of that contract, SAWS's obligation to pay the assessments under these facts began. Additionally, the trial court failed to make any finding as to what the triggering point for future assessments is under the Declaration.

Accordingly, we vacate the judgment of the trial court and remand this case for the trial court to construe the Declaration under the ordinary rules of contract construction to determine at what point, if any, the obligation to pay assessments commences upon a Builder to whom a unit (or more) of property has already been conveyed as to each subsequently platted unit.[2] After making this determination, the

_____

[2]     The cardinal rule of construction is to ascertain the intent of the parties. Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties. To determine the intent of the

9

trial court should reconsider Forestar's motions for summary judgment as to SAWS's claims for declaratory judgment and breach of covenant on the issue of assessments and how they are to be calculated based upon the Declaration. See generally *CBS, Inc. v. Anointed Hair Studio, Inc.*, 325 Ga. App. 560, 562-563 (1) (754 SE2d 138) (2014); see also *Board of Regents of the Univ. System of GA v. Daniels*, 264 Ga. 328 (446 SE2d 735) (1994).

*Case No. A17A0870*

2. Forestar contends that the trial court erred in denying its motions for summary judgment as to SAWS's claims for declaratory judgment and breach of

---

parties, all the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred. When the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation the language used must be afforded its literal meaning and plain ordinary words given their usual significance.

(Citation and Punctuation omitted). *Crabapple Lake Parc Community Assn, Inc. v. Circeo*, 325 Ga. App. 101, 105 (1) (a) (751 SE2d 866) (2013). See *Marino*, 331 Ga. App. at 208 (1) (the declaration of a homeowner's association should be construed using the normal rules of contract construction).

covenant regarding maintenance of common areas under the Declaration. Specifically, Forestar argues that the Declaration unambiguously provides that it is not responsible for the maintenance of the common areas located on SAWS's property.

The threshold issue for SAWS's claims for declaratory relief and breach of covenant as to the maintenance of common areas is whether the Amended and Supplementary Declarations are enforceable.

The original Declaration provides that, "[a]n integral part of the development plan is the [HOA], an association comprised of all Seven Hills property owners, to own, operate, and/or maintain various common areas and community improvements." The original Declaration defines common area as, "[a]ll real and personal property which the Association owns, leases, or otherwise holds possessory or use rights in for the Owners' common use and enjoyment." The Amended Declaration provides that, "[o]wners within a Neighborhood shall be responsible for paying, through Neighborhood Assessments, the costs of operating, maintaining and insuring certain portions of the Area of Common Responsibility within or adjacent to such Neighborhood."

11

Additionally, as to maintenance of the area of common responsibility, the original Declaration provides, in pertinent part, that

The [HOA] shall maintain, in accordance with the Community-Wide Standard, the Area of Common Responsibility, which shall include, but need not be limited to:

(a) the Common Area, including, without limitation, entry features, recreational amenities, gathering parks and areas, natural areas, sidewalks, and private roadways, if any, within Seven Hills;

(b) landscaping and sidewalks within public rights-of-way within or abutting Seven Hills;

(c) such portions of any additional property which may be dictated by [Forestar], this Declaration, any Supplemental Declaration, or any contract, covenant, or agreement the [HOA] enters into (or which [Forestar] enters into on the [HOA's] behalf); and

(d) any property and facilities that [Forestar] owns and makes available, on a temporary or permanent basis, for the primary use and enjoyment of the [HOA] and its Members . . .

The [HOA] may maintain other property which it does not own, including, without limitation, property dedicated to the public, if the Board determines that such maintenance is necessary or desirable to maintain the Community-Wide Standard.

12

The Amended Declaration replaces that section in its entirety and provides that:

> The [HOA] shall maintain, in accordance with the Community-Wide Standard, the Area of Common Responsibility.

> The [HOA] may maintain other property which it does not own, including, without limitation, property dedicated to the public, if the Board determines that such maintenance is necessary or desirable to maintain the Community-Wide Standard . . .

> Without limiting the generality of the foregoing, upon assignment from [Forestar], the [HOA] shall assume all of [Forestar's] . . . responsibilities with respect to the maintenance and operation of the Common Area . . .

The Supplementary Declaration provides, in pertinent part, that,

SAWS [has] recorded one or more subdivision plats . . . referred to as a 'Nature Walk Plat' . . .

. . .

[Forestar] has not accepted any Nature Walk Common Areas or assumed any responsibility for any portion of the [SAWS] real property . . .

[Forestar] has made no promises, representations or warranties, express or implied, regarding constructing, erecting or maintaining any Nature Walk Common Areas or other areas of common responsibility . . .

13

including, without limitations, any signage, entry features, right-of-way, greenspace, private streets, lakes or ponds, golf cart paths, nature trails or other recreational amenities located therein.

There are not any Common Areas of Common Responsibility with the [SAWS] real property . . .

[N]either [Forestar] or the [HOA] have agreed to accept as Common Areas any portions of [SAWS's] real property . . .

[N]either [Forestar] or the [HOA] have agreed to assume responsibility for any portion of [SAWS's] real property . . .

. . .

Neither the [HOA] nor [Forestar] has assumed any responsibility for any property within the Nature Walk Neighborhood pursuant to the Declaration, any Supplemental Declaration, covenant, contract or agreement . . . . Further, neither the [HOA] nor [Forestar] has assumed any responsibility for any property within the Nature Walk Neighborhood by virtue of designating Nature Walk as a Neighborhood. Therefore, the [HOA] has no obligation to maintain any portion of the Nature Walk Neighborhood.

The obligation for operating, maintaining and insuring signage, entry features, right-of-way, greenspace between the Nature Walk Neighborhood and adjacent public roads, private streets within the Nature Walk Neighborhood, lakes or ponds within the Nature Walk

14

Neighborhood, and any golf cart paths, nature trails or any other recreational amenities within the Nature Walk Neighborhood remains with the Owner of such property upon which any such improvement exists.

Forestar's position is that, pursuant to language in the original Declaration, it has the authority to amend and supplement the original Declaration. The original Declaration provides that "[Forestar] may unilaterally record a Supplemental Declaration, amend this Declaration or any Supplemental Declaration to create Neighborhoods, redesignate Neighborhood boundaries, or combine two or more existing Neighborhoods." The original Declaration further provides that "[i]n addition to specific amendment rights granted elsewhere in this Declaration . . . [Forestar] unilaterally may amend this Declaration for any purpose."

SAWS argues that the Amended and Supplemental Declaration are not enforceable. According to SAWS, the language in the original Declaration purportedly authorizing Forestar to amend and supplement the Declaration was too broad to properly put purchasers of property within Seven Hills on notice that such material changes could be made to the existing Declaration. SAWS further argues that

15

Forestar was prohibited from making a material change to the Declaration that would burden existing homeowners within SAWS's property.

"The construction of a contract is peculiarly well suited for disposition by summary judgment because, in the absence of an ambiguity in terms, it is a question of law for the court." (Footnote omitted). *Tucker Materials (GA), Inc.* 245 Ga. App. at 310. See *Precision Planning, Inc. v. Richmark Communities, Inc.*, 298 Ga. App. 78 (679 SE2d 43) (2009) ("The issues of contract construction and enforceability are generally questions of law for a court to resolve[.]") (citations and footnotes omitted).

In its summary judgment order, the trial court included language from both the original and Supplemental Declarations, but did not address which Declaration governed Forestar's responsibilities, or lack thereof, regarding maintenance of common areas even though each party argued that a different Declaration controlled. The issue of whether the original Declaration was properly amended and supplemented must be resolved prior to analyzing SAWS's claims. Accordingly, we remand this case to the trial court to resolve the issue of which Declaration controls and then to construe the enforceable Declaration when analyzing Forestar's motion for summary judgment as to SAWS's claims for declaratory judgment and breach of

16

contract regarding maintenance of common areas. See generally *DeKalb County v. City of Decatur*, 297 Ga. App. 322, 325 (677 SE2d 391) (2009).

3. Forestar contends that the trial court erred by denying its motion for summary judgment as to SAWS's claim for tortious interference with business relations. Specifically, Forestar argues that SAWS has produced no evidence that it suffered any damages as a result of Forestar's alleged interference.

> The essential features of a cause of action for tortious interference with business relations are that the defendant, acting improperly, without privilege, and with the malicious intent to injure plaintiff, induces a third party not to enter into or to continue a business relationship with plaintiff, which causes plaintiff financial injury.

(Citations, footnotes, and punctuation omitted.) *Sumter Regional Hosp., Inc. v. Sumter Free Press, Inc.*, 248 Ga. App. 780, 781 (1) (546 SE2d 831) (2001).

SAWS claims that agents and employees of Forestar provided existing and prospective home buyers with false information about its property, specifically concerning HOA assessments, common area maintenance, and amenities. Additionally, SAWS claims that in furtherance of Forestar's effort to provide misinformation about SAWS Property, it attempted to amend and supplement the

17

original Declaration. SAWS alleges that as a result of Forestar's actions, it suffered damages and lost sales.

However, SAWS has not demonstrated that any alleged conduct on behalf of the agents and employees of Forestar caused any lost sales. The only evidence that SAWS points to regarding financial injury is an affidavit from a potential home buyer. That affidavit stated that the potential home buyer was a real estate agent and, along with her husband, looked at homes within Seven Hills, including SAWS's proprieties. Initially, the potential home buyer put one of SAWS's properties under contract and when she informed the BHHS's agents that she did so, they told her to carefully review the HOA documents because there could be extra fees for the SAWS's properties. The affidavit concludes by stating that, "[d]ue to a number of factors in the sales process, we eventually decided to cancel the contract with [SAWS]. . . . My husband and I love [SAWS's properties] and are disappointed that the dispute between Seven Hills and [SAWS] interfered with our purchase decision."

This affidavit does not establish that any actions by Forestar's agents or employees induced the potential home buyer to cancel the contract. Additionally, at some point after the affidavit was filed, the potential home buyer sent an email to all of the lawyers involved in the case explaining her desire to withdraw the affidavit

18

because she discovered an "untruth" on the final page. The potential home buyer stated that she asked SAWS to re-word the affidavit several times and that on the final version she signed the last page without noticing the "untruth." The potential home buyer stated that the final paragraph referencing that the dispute between Seven Hills and SAWS interfered with her decision to purchase the SAWS property was untrue.

The potential home buyer subsequently filed a second affidavit. The second affidavit states, in pertinent part:

> [P]aragraph 9 of the . . . affidavit, which provides: 'My husband and I love the [SAWS's property] and are disappointed that the dispute between Seven Hills and [SAWS] interfered with our purchase decision[,'] is not correct. I am a professional real estate agent and in my experience when a developer represents something as a possible future subdivision amenity, that is not a guaranty that the amenity will be built. [BHHS's agents] suggested to me that I should carefully review the homeowners' association documents, but this was something I was already doing on my own. After doing my due diligence, I felt that the representations being made to my husband and me by [SAWS] representatives about future amenities, and costs associated with them, were likely not accurate. I reached this conclusion on my own, and nothing said or done by [BHHS's agents] influenced me in this regard. My husband's and my decision to cancel the [SAWS] lot contract had nothing to do with any dispute between Seven Hills and [SAWS] or anything said or done by [BHHS's agents]. Rather, the decision by my

husband and me to cancel the [SAWS] lot contract and instead purchase [in Seven Hills] came down to a comparison of the incentives, the values, the quality of construction and the overall fit for our lifestyle. The [SAWS] homes . . . were less expensive, but did not include many of the upgrades that we were looking for and I was concerned about the relative quality and resale value of the [SAWS] homes . . . compared to those in other sections of Seven Hills.

These affidavits are the only evidence of damages that SAWS points to and do not establish that any action on Forestar's behalf caused SAWS lost sales. Regardless of the fact that neither of the affidavits from the potential home buyer mention any alleged statements from a Forestar agent or employee, the evidence does not demonstrate any financial loss as a result of Forestar's (or BHHS's) alleged actions. SAWS is unable to identify a single prospective home buyer whose sale it lost due to the alleged actions of Forestar, nor any other financial loss. Accordingly, the trial court erred in denying summary judgment to Forestar on the tortious interference count. See *Sumter Regional Hosp., Inc.*, 248 Ga. App. at 781-782 (1); see also *Lively v. McDaniel*, 240 Ga. App. 132, 134 (3) (522 SE2d 711) (1999).

*Case No. A17A0871*

4. BHHS contends that the trial court erred by denying its motion for summary judgment as to SAWS's claim for tortious interference with business relations.

20

Specifically, BHHS argues that SAWS has produced no evidence that it has suffered any damages as a result of BHHS's alleged interference.

SAWS points to the same evidence of alleged damages as it did in the tortious inference claim against Forestar. Accordingly, for the reasons set forth in Division 3, we conclude that the trial court erred by denying summary judgment to BHHS. See *Sumter Regional Hosp., Inc.,* 248 Ga. App. at 781-782 (1); see also *Lively*, 240 Ga. App. at 134 (3).

*Judgment vacated and case remanded in Case No. A17A0869. Judgment reversed and case remanded in Case No. A17A0870. Judgment reversed in Case No. A17A0871. Ellington, P. J., and Andrews, J., concur.*